In Re: THE PRUDENTIAL INSUR-
ANCE COMPANY OF AMERICA
SALES PRACTICES LITIGATION

Frank La Marra; Giuseppina La
Marra; Reardon Golinkin &
Reed, Appellants

No. 01–4085.

United States Court of Appeals,
Third Circuit.

Argued July 15, 2002.

Filed Dec. 19, 2002.

Scott O. Reed (Argued), Karen A. Reardon, Reardon Golinkin & Reed, Chicago, IL, for Appellants.

Edward J. Reich (Argued), Michael H. Barr, Sonnenschein Nath & Rosenthal, New York, NY, for Appellee.

Before SCIRICA, ALITO and FUENTES, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

Plaintiffs are unnamed members in a nationwide federal class action involving the fraudulent sale of insurance policies by agents of Prudential Insurance Company. The class action was settled in 1997 and has paid out more than four billion dollars to eight million class members through a comprehensive alternative dispute resolution program.

Although plaintiffs have received their full allotment of proceeds under the settlement, they challenged—in state court and under state law—the manner in which the defendant insurance company handled their claims. Defendants removed the case to federal court seeking to enjoin prosecution of plaintiffs' claims. After the District Court granted the requested injunction and found removal proper, plaintiffs appealed. At issue is whether the District Court had authority under the All Writs Act to enjoin the state action and retain removal jurisdiction. We will affirm the District Court's issuance of the injunction, but reverse with respect to the propriety of the removal.

## I.

Each of plaintiffs' claims is related to an eight-million member class action directed at a pattern of fraudulent practices in the sales of life insurance policies. A multitude of federal cases, including many that had been removed from state court, were consolidated in the United States District Court for the District of New Jersey as MDL 1061. In 1997, the District Court certified a nationwide class and approved a settlement, *In re Prudential Ins. Co. Sales Practices Litig.*, 962 F.Supp. 450 (D.N.J. 1997), which we affirmed. 148 F.3d 283, 289 (3d Cir.1998). The class included persons who had purchased certain insurance policies, including "variable appreciable life" policies ("VALs") from Prudential between 1982 and 1995.[1] The District Court found that during this period, Prudential "used pervasive and systematic deceptive sales tactics to sell many individuals a great number of life insurance policies, to

---

1. VALs are life insurance policies that have cash values that fluctuate with the performance of the investment of the paid premiums. The performance of the investment may affect the level of premiums that must be paid.

the benefit of Prudential and its sales agents, but to the detriment of trusting consumers." 962 F.Supp. at 467.

Among the avenues for relief available to class members under the settlement was a multi-leveled alternative dispute resolution process ("ADR"). *See Prudential,* 148 F.3d at 294–96. This process permitted the presentation of individual claims by each class member in order to obtain all of the relief contemplated by the settlement. Each claim was first evaluated by the Claim Evaluation Staff, comprised of Prudential employees. A less than fully-favorable determination was automatically transmitted to a team of independent claim evaluators for review. These evaluators would make a recommendation to the Claim Review Staff—a group again comprised of Prudential employees. The claimant—but not Prudential—was entitled to de novo review of the Claim Review Staff's determination by the Appeals Committee, which was selected jointly by the company, class counsel, and state regulators. Successful claimants were awarded, inter alia, refunds of premiums, rescission of policies, "enhanced value policies which allow members to purchase new policies with additional coverage paid for by Prudential," and various forms of compensatory relief.[2] *Id.* at 296–97.

Plaintiffs Frank and Giuseppina La Marra are New Jersey residents who purchased nine life insurance policies from Prudential for themselves and their children. Of these, seven were VALs purchased within the class period. One was a VAL purchased after the class period. The La Marras settled their claims with respect to that policy separately. The last policy was a term life policy not within the scope of the settlement. Defendants assert, and plaintiffs do not contest, that after the filing of the complaint, but before the District Court decided this case, plaintiffs converted that policy to a VAL, and obtained relief through the procedures contemplated by the settlement.

The La Marras pursued their claims in ADR.[3] At some point during the ADR process, the La Marras became dissatisfied with Prudential's handling of their claims and filed an action in Illinois state court seeking damages arising from Prudential's actions. They have since completed the ADR process and do not challenge the adequacy of the relief obtained there.

The complaint alleges four causes of action, all of which arise under New Jersey state law. Count I is for negligence. Plaintiffs allege Prudential had a duty of care "in processing their claims on the ADR Policies in a fair, efficient and reasonable manner." Because Prudential violated this duty, "the La Marras have suffered damage including but not limited to, the lost use of the premiums they wrongfully paid to Prudential; finance charges, bank charges and legal fees incurred as the result of their lack of access to those funds during the period of Prudential's wrongful delay; emotional distress and

---

2. For a more detailed recitation of the procedures and relief available under the settlement, see our summary, *Prudential,* 148 F.3d at 294–97, and the District Court's recitation, *Prudential,* 962 F.Supp. at 488–95.

3. The ADR was designed to allow participation without the assistance of counsel. The La Marras, however, retained the law firm of Reardon, Golinkin & Reed to assist them with the process, claiming Prudential had made it more or less impossible for them to go through the process on their own. Under the settlement, the La Marras would have been provided free counsel had they requested it. Class counsel assigned lawyers for this purpose. It is unclear why the La Marras used Reardon, Golinkin & Reed instead of appointed counsel.

mental anguish; and other damages." As plaintiffs characterize this claim, it does not implicate the terms of the settlement nor the relief they received under it. They only seek damages resulting directly from the alleged negligent handling of their claims.

Count II is a claim for "bad faith claims handling" under New Jersey law. This cause of action arises under a New Jersey statute, N.J. Stat. Ann. § 17B:30–13.1, which governs insurance companies' duties in processing insurance claims. Plaintiffs contend the various missteps by Prudential in handling the ADR process violate this statute.[4] The conduct underlying their claim would appear to be essentially the same conduct allegedly providing the cause of action in Count I.

Plaintiffs allege in Count III, on behalf of Reardon, Golinkin & Reed, "intentional interference with contract," claiming Prudential's handling of the ADR process injured the law firm by interfering with its relationship with the La Marras. Among other wrongs, plaintiffs allege Prudential inappropriately communicated directly with the La Marras, even though they were represented by counsel for purposes of the ADR process.

The final count, Count IV, is for "unsuitability," a substantive claim addressing the improper sale of the term life policy purchased by the La Marras not covered by the class action. Plaintiffs claim this policy was an "unsuitable" life insurance product. But again, it appears that after the complaint was filed, the La Marras converted the policy into a VAL and processed claims related to this policy through ADR. Thus, it seems they have obtained relief for all of the policies they purchased—the seven within the class, the later-purchased one independently settled, and the term life policy later converted and processed through ADR.[5]

Plaintiffs' central claims address negligent and bad faith handling of their claims under the ADR process. They stress they do not take issue with the ultimate results of that process. Instead, they contend Prudential's poor handling of their claims, by means of unreasonable delay and other factors,[6] caused injuries giving rise to claims under New Jersey law.

Plaintiffs filed these state law claims in Illinois state court on December 5, 2000. Prudential removed the case to the United States District Court for the Northern District of Illinois on January 5, 2001. On February 1, 2001, the Judicial Panel on Multidistrict Litigation issued a conditional order to transfer the case to the United States District Court for the District of New Jersey. The next day, plaintiffs moved to remand. Following briefing and argument, the MDL panel transferred the case.

4. The ADR process was not created to process insurance claims. It processed tort claims related to the sale of insurance policies. So it appears plaintiffs have not stated a claim for bad faith handling of insurance claims.

5. While the claim seems to be no longer viable, at the time of the filing of the complaint, plaintiffs may have had a cause of action with respect to the term life policy.

6. In their complaint, plaintiffs describe Prudential's alleged misdeeds as follows:
Prudential's claims-handling conduct involved: repeated delays in responding to the La Marras' correspondence; repeated attempts to circumvent their legal counsel through *ex parte* communications with them; requesting the La Marras to execute the same claim forms multiple (as many as six) times on many of the VAL policies; causing ADR appeals to be scheduled without notice or with notice after the fact; rejecting properly completed claim forms; and asking for duplicative, additional and unnecessary signatures, among other things.

By the time the Illinois case was transferred to the New Jersey District Court, Prudential had already filed its motion to stay the Illinois case. Plaintiffs filed a renewed motion to remand the case back to state court. Considering both motions, the District Court ruled in favor of Prudential and enjoined "further prosecution of the claims set forth in respondents' complaint in this or any other forum." It also held that "[r]espondents' contention that their lawsuit should be remanded for lack of subject matter jurisdiction is without merit." *In re Prudential Ins. Co. Sales Practices Litig.*, No. 95–4707, at 13 (E.D.Pa. Oct. 12, 2001). Retaining jurisdiction, the District Court dismissed plaintiffs' claims "with prejudice." *Id.* Plaintiffs appealed.

## II.

■ Plaintiffs challenge both the injunction and the removal.[7] They contend the injunction violated the Anti–Injunction Act, 28 U.S.C. § 2283, which prohibits most federal court injunctions staying state court proceedings, and that the Illinois case should have been remanded, as the District Court lacked any basis for asserting jurisdiction over that case. While the injunction and the dismissal have a similar effect, these issues are analytically independent. The injunction does not turn on the propriety of the removal. The injunction was issued under the federal court's jurisdiction in MDL 1601, which it had whether or not the state claims were removed. The removal issue goes only to the court's authority to dismiss plaintiffs' claims with prejudice, an issue related to— but distinct from—the court's authority to issue the injunction.

### a. *Injunction.*

■ District courts are empowered by the All Writs Act to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. This authority is limited, however, by the Anti–Injunction Act, which prohibits injunctions having the effect of staying proceedings in state courts except "as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "The exceptions in the Anti Injunction Act are to be construed narrowly." *In re Diet Drugs*, 282 F.3d at 233. The Act "is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an

---

7. Plaintiffs also make two further claims. Citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), they contend the District Court erred in reaching a result contrary to that dictated by New Jersey law. As we understand it, this is a claim that the District Court reached the wrong result on the merits. Because we determine the District Court did not have jurisdiction to resolve these claims, we do not consider this substantive claim.

Plaintiffs also maintain the District Court lacked personal jurisdiction over Reardon, Golinkin & Reed, as it is an Illinois law firm with insufficient contacts with New Jersey for the court to assert jurisdiction over it. But the firm represents the La Marras in matters related to the Prudential class action, and the District Court undisputedly had jurisdiction over them. "Because the District Court had personal jurisdiction over members of the ... class, it also had jurisdiction over attorneys purporting to represent, and act on behalf of" members of that class, including the La Marras. *In re Diet Drugs*, 282 F.3d 220, 231 (3d Cir.2002).

orderly fashion to finally determine the controversy." Id. at 297, 90 S.Ct. 1739.

■ The District Court enjoined "further prosecution of the claims set forth in respondents' complaint in this or any other forum." Although the injunction is directed at plaintiffs, and not at the state court, it has the effect of staying the state court proceeding, and is therefore subject to the Anti–Injunction Act's restriction unless it falls within one of the exceptions. "It is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties. . . ." Id. at 287, 90 S.Ct. 1739.

Antisuit injunctions are permitted: (1) "as expressly authorized by Act of Congress"; (2) "where necessary in aid of its jurisdiction"; or (3) "to protect or effectuate its judgments." 28 U.S.C. § 2283. Prudential maintains the District Court's injunction was permitted under the second and third exceptions.

The "relitigation exception," which permits injunctions "to protect or effectuate [a federal court's] judgments," is "founded in the well-recognized concepts of res judicata and collateral estoppel." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988); *In re Prudential Ins. Co. Sales Practice Litig.: Lowe*, 261 F.3d 355, 364 (3d Cir.2001). It would appear that at least a significant part of plaintiffs' action is barred by res judicata, and is subject to the possibility of an anti-relitigation injunction. Nonetheless, plaintiffs argue most of the actions complained of occurred in the ADR process—necessarily after judgment in the class action settlement—which implies they cannot be precluded by that judgment.

But plaintiffs' claims here constitute a direct challenge to the system of remedies specified in the class action settlement. While plaintiffs contend they do not challenge these procedures themselves, or the award they derived from it, their claims cannot be separated from challenges to the ADR procedures. They allege, for instance, undue delay in obtaining relief. But a determination of unreasonable delay or improper handling is necessarily dependent on an assessment of the adequacy and operation of the settlement's ADR procedures.[8] It is far from certain, therefore, that plaintiffs could state these claims in a manner sufficiently detached from the issues resolved in the class action to avoid claim preclusion.

■ Regardless, we need not determine the extent to which these claims are precluded by the nationwide settlement because the District Court had the power to issue this injunction under the "in aid of jurisdiction" exception. We have recognized that district courts overseeing complex federal litigation are especially susceptible to disruption by related actions in state fora. *In re Diet Drugs*, 282 F.3d at 235–36. Undeniably, this one discrete case would have provided little disruption to an eight-million-member class action. But while the Illinois litigation would not have brought down the settlement on its own, permitting this kind of action would open up the possibility of a large, or even an overwhelming, number of collateral attacks on the settlement itself, especially given the eight-million-member class. Just as in *Prudential–Lowe*,[9] defendants in large

---

**8.** Furthermore, their allegation that Prudential improperly communicated with Reardon, Golinkin & Reed appears to conflict with a provision in the settlement that may authorize such communications.

**9.** In *Prudential–Lowe*, plaintiffs obtained the benefits of the Prudential Sales Practices litigation settlement on some of their policies, but sought recovery in state court for damages related to other policies. The District Court enjoined the use of evidence common

class actions "would always be concerned that a settlement of the federal class action would leave them exposed to countless suits in state court despite settlement of the federal claims," a consequence that would "seriously undermine the possibility for settling any large, multi district class action." 261 F.3d at 367.

The settlement here represented a herculean effort to provide a fair and consistent framework for the resolution of millions of claims. The comprehensive procedures implemented for this purpose were integral to this effort. Permitting continued litigation of these claims would "unsettle" what had been thought to be settled, and would disrupt carefully constructed procedures for individual dispute resolution. Allowing comprehensive settlements to be undermined in this way would undeniably deter similar settlements in the future.

Of equal importance, permitting collateral attacks of this kind in a state court would undermine the rationale girding Federal Rule of Civil Procedure 23 and Congress's purposes underlying diversity jurisdiction and the Multidistrict Litigation Act, 28 U.S.C. § 1407, an application of Congress's constitutional power to regulate interstate commerce.

At the time of settlement, the District Court "retain[ed] exclusive jurisdiction as to all matters relating to administration, consummation, enforcement and interpretation of the Stipulation of Settlement and of this Final Order and Judgment, and for any other necessary purpose." 962 F.Supp. at 566. In previous litigation in this class action, we noted approval of that retention of jurisdiction. *Prudential–Lowe,* 261 F.3d at 367–68. The Illinois case constituted just the kind of interfer-

ence that the Final Order was designed to avoid. The District Court was well within its authority to enforce that provision by enjoining the action in Illinois court.

Thus, even if the District Court's order is not permitted by the relitigation exception to the Anti–Injunction Act, it is justified as "necessary in aid of its jurisdiction." Accordingly, we will affirm the District Court's injunction barring litigation of plaintiffs' claims.

*b. Removal.*

■ Plaintiffs also argue Prudential's removal of the case to federal court was unsupportable, and that the District Court consequently lacked subject matter jurisdiction to resolve plaintiffs' claims. As noted, the propriety of the removal does not affect the District Court's jurisdiction to issue the antisuit injunction—which was issued under, and in protection of, the court's jurisdiction over MDL 1601. But the court also dismissed plaintiffs' claims with prejudice, an action that required it to have subject matter jurisdiction over those claims. It had such jurisdiction only if removal was proper.

The District Court did not rely on the conventional bases of removal jurisdiction. In this case, diversity jurisdiction does not obtain and no federal question is presented. Accordingly, the District Court would not have had original jurisdiction over these state law claims. Instead, the District Court relied on the All Writs Act—under its jurisdiction in the nationwide class action—to deny plaintiffs' motion to remand and to retain jurisdiction over the Illinois case.

to the policies released in the class-action settlement. We upheld the injunction under

the All Writs Act. 261 F.3d at 369–70.

■ But the Supreme Court recently held that the All Writs Act cannot be employed to remove an otherwise unremovable case. *Syngenta Crop Protection, Inc. v. Henson,* — U.S. —, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002). Under the traditional boundaries of the All Writs Act, the Court's decision was uncontroversial. Enacted by the first Congress in 1789, the most recent version of the All Writs Act was adopted in 1948. Yet even in the modern era of civil litigation, there has been a sea change in the nature of complex litigation involving class actions and the aggregation of individual cases and also in the complex relationship between federal and state jurisdiction, especially regarding duplicative and competing class actions.

Within our traditional notions of federalism, the question arises when mass claims truly national in scope affecting litigants in fifty states should be handled in the court of a single state. The Supreme Court has determined that in such actions the statutory and decisional law of one state can bind the citizens of all states. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Nevertheless, the problems arising from duplicative or competing nationwide class actions applying the laws of particular states to passive litigants in other states are evident.

In any event, the Supreme Court has determined that even when "necessary in aid of ... jurisdiction," the All Writs Act cannot be used to effect a removal. Accordingly, the District Court erred in refusing to remand the case for lack of federal subject-matter jurisdiction. Therefore, we will reverse the District Court's denial of plaintiffs' motion to remand.

### III.

For the foregoing reasons, we will affirm the injunction issued by the District Court, and remand the case with instructions to remand the Illinois claims back to state court.