

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-1-2007

# In Re Prudential

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3186

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"In Re Prudential " (2007). *2007 Decisions.* Paper 1145.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1145

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3186
_____

IN RE: THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA SALES PRACTICES LITIGATION

ALFRED W. DEYTER, MARY M. DEYTER, Individually and
STEVEN M. BROWNELL, as Trustee on behalf of the
DEYTER FAMILY IRREVOCABLE LIFE INSURANCE
TRUST, dated November 8, 2000,

Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 95-cv-04704)
District Judge: Honorable Dickinson R. Debevoise
_____

Submitted Under Third Circuit LAR 34.1(a)
Thursday March 29, 2007

Before: RENDELL, BARRY, and CHAGARES, <u>Circuit</u> <u>Judges</u>.

(Filed May 1, 2007)

_____

OPINION OF THE COURT
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

This appeal presents us with yet another installment in the ongoing saga that is this class-action lawsuit. Relying on the District Court's final order and judgment in this matter, The Prudential Insurance Company of America ("Prudential") moved to enjoin appellants Alfred Deyter, Mary Deyter, and Steven Brownell as Trustee of the Deyter Family Irrevocable Life Insurance Trust (collectively, "the Deyters") from pursuing certain claims against Prudential in the Florida state courts. The District Court granted the motion. The Deyters appeal. We will affirm.

I.

Our prior opinions thoroughly explain the circumstances that gave rise to the underlying class action. <u>See, e.g.</u>, <u>In re The Prudential Ins. Co. of Am. Sales Practices Litig.</u> ("<u>Prudential: La Marra</u>"), 314 F.3d 99 (3d Cir. 2002); <u>In re Prudential Ins. Co. of Am. Sales Practice Litig.</u> ("<u>Prudential: Lowe</u>"), 261 F.3d 355 (3d Cir. 2001); <u>In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions</u> ("<u>Prudential: Krell</u>"), 148 F.3d 283 (3d Cir. 1998). Because we write only for the parties, we need not provide so exhaustive a factual discussion.

In 1994, Prudential began to face a number of lawsuits alleging fraudulent practices in its marketing and sales of life-insurance policies. <u>See</u> <u>Prudential: Krell</u>, 148 F.3d at 290. Eventually, more than 100 actions were "centralized in the District of New Jersey" by the Judicial Panel on Multidistrict Litigation. <u>Id.</u> at 292 n.6. The amended class-action complaint alleged that "Prudential used its centralized marketing system to

2

implement a scheme to sell new insurance policies to existing and new customers through three deceptive sales tactics: 'churning,' 'vanishing premium,' and 'investment plan' techniques." In re The Prudential Ins. Co. of Am. Sales Practices Litig., 962 F.Supp. 450, 474 (D.N.J. 1997). The complaint further alleged that "Prudential was aware of these fraudulent sales practices as early as 1982," but "Prudential failed to take serious steps to combat the abuses." Prudential: Krell, 148 F.3d at 294.

The parties filed a final settlement agreement with the District Court in October 1996. The settlement class generally "included all persons who owned one or more Prudential insurance policies between January 1, 1982 and December 31, 1995." Id. In a lengthy opinion, the District Court certified the class and approved the settlement. See Prudential, 962 F.Supp. at 564-66.

On appeal, we affirmed. Prudential: Krell, 148 F.3d at 346. In doing so, we noted that individual notice of the settlement and the right to opt out of the class was sent "to the last known address of the over 8 million present and former policyholders who comprised the putative class." Id. at 327. In addition, the parties published "notice in the national editions of The New York Times, The Wall Street Journal, USA Today and The Newark Star Ledger." Id. Prudential also published "notice in the largest circulating newspaper in each of the fifty states and the District of Columbia." Id. In light of this "unparalleled" outreach, we agreed with the District Court's conclusion that this "comprehensive notice program . . . far exceeded the requirements of [Federal Rule of Civil Procedure] 23 and due process." Id. (internal quotation omitted).

3

The settlement's purpose was to remediate fully the class members. Indeed, billions of dollars have been paid to "members through a comprehensive alternative dispute resolution program" provided by the settlement. Prudential: La Marra, 314 F.3d at 100. In order to resolve the matter finally, the settlement contained a broad release of claims:

> Plaintiffs and all Class Members hereby expressly agree that they shall not now or hereafter institute, maintain or assert against the Releasees, either directly or indirectly, on their own behalf, on behalf of the Class or any other person, and release and discharge the Releasees from, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, of any kind or nature whatsoever, whether based on Federal, state or local statute or ordinance, regulation, contract, common law, or any other source, that have been, could have been, may be or could be alleged or asserted now or in the future by Plaintiffs or any Class Member against the Releasees . . . on the basis of, connected with, arising out of, or related to, in whole or in part, the Released Transactions and servicing relating to the Released Transactions, which include without limitation:
>> (i) any or all of the acts, omissions, facts, matters, transactions or occurrences that were directly or indirectly alleged, asserted, described, set forth or referred to in the Action;
>> (ii) any or all of the acts, omissions, facts, matters, transactions, occurrences, or any oral or written statements or representations allegedly made in connection with or directly or indirectly relating to the Released Transactions, including without limitation any acts, omissions, facts, matters, transactions, occurrences, or oral or written statements or representations relating to:
>>> (a) the number of out-of-pocket payments that would need to be paid for the Policies;
>>> (b) the ability to keep or not to keep a Policy in force based on a fixed number and/or amount of premium payments . . . and/or the amount that would be realized or paid under a Policy based on a fixed number and/or amount of cash payments . . . in the form of . . . cash value . . . .;
>>> (c) the nature, characteristics, terms, appropriateness, suitability, descriptions and operation of Policies;

4

Supplemental Appendix ("Supp. App.") 29-30.  In addition, the District Court's final order stated that the settlement would have "res judicata and claim preclusive effect in all pending and future lawsuits maintained by or on behalf of . . . all . . . class members." Prudential, 962 F.Supp. at 565.  Further, the order stated that "[a]ll claims for compensatory or punitive damages on behalf of class members are hereby extinguished, except as provided for in the Stipulation of Settlement."  Id.  And the order also permanently enjoined class members from relitigating the "facts and circumstances" covered by the settlement:

> All class members, and all persons acting on behalf of or in concert or participation with any class member, are hereby permanently enjoined from this day forward from filing, commencing, prosecuting, intervening, or participating in any lawsuit on behalf of any class member in any jurisdiction based on or relating to the facts and circumstances underlying the claims and causes of action in this lawsuit or the Released Transactions. . . ."

Id. at 566.

The Deyters are members of the class and subject to this final judgment.  They own seven policies that were entered into during the class period.  The Deyters also own an additional, nonclass policy that they applied for in the year 2000.  Prudential records indicate that the Deyters were mailed notice of the class action in November 1996. Prudential also mailed notice to the Deyters' daughter, who at the time owned one of the policies, at the same address.  The U.S. Postal Service did not return these notices as undeliverable or non-forwardable, and neither the Deyters nor their daughter opted out of the class.  Nonetheless, the Deyters never took any steps to participate in the settlement.

5

In November 2002, the Deyters brought suit against Prudential and two of its former employees in Florida state court. Their amended complaint alleged that the "Prudential agent who sold the Deyters a $400,000 life insurance policy . . . in 1992 told them they would not have to pay premiums on that policy after they paid ten . . . annual premium payments." Appendix ("App.") 21. In reliance on this claim of so-called "vanishing premiums," the Deyters purchased the policy and named their daughter as owner. According to the complaint, "[b]etween 1982 and 1995, [the Deyters] did not know that they had been the victims of any wrongdoing by The Prudential," and "they did not appreciate the fact they had sustained any damages as a result of the conduct of The Prudential or its agents." App. 20. The Deyters also claimed to have no notice of any class action, and stated they were "completely unaware of the fact that they had any responsibility whatsoever to file a claim against The Prudential in a class action." Id.

The Deyters paid their premiums on time and in full through the year 2000. In that year, Prudential agents contacted the Deyters to discuss their 1992 policy. The agents advised the Deyters to transfer ownership of the policy from their daughter to an irrevocable trust. The thought was that this would shield the policy from potential judgment-creditors. The complaint states that Prudential agents told the Deyters that the Prudential Trust Bank of Atlanta "would only charge 'peanuts' . . . to act as trustee of their trust." App. 23. The agents also reiterated that the Deyters only had one more premium payment to make on their 1992 policy.

6

In reliance on these representations, the Deyters agreed to the trust arrangement. The Deyters also purchased a new $350,000 life insurance policy. As to this policy, the complaint alleges that Prudential agents "told the Deyters the new policy would be just like the $400,000 policy they already had except they would not have to pay any premium payments on this policy out of their own pocket." App. 24. Rather, the premiums would be paid from a $128,000 surplus the Deyters had with Prudential. At any time, the agents stated, the new policy "could be converted to a fully paid-up policy. . . ." App. 25. The complaint further alleges that Prudential agents fraudulently overstated the Deyters' net worth.

According to the complaint, the Deyters came to realize over time that Prudential had misrepresented the facts. Prudential charged $900 for setting up the trust and $1,000 per year for maintaining it; those sums are hardly "peanuts." It also turned out that the Deyters still had to pay $9,250 and $13,700, respectively, on their 1992 and 2000 policies. Furthermore, a high-yield mutual fund purchased by the Deyters to help pay the premiums did not produce the promised returns. The complaint alleges that after the Deyters failed to pay additional premiums on the $400,000 1992 policy, Prudential cancelled it and issued a $210,014 paid-up policy. Allegedly, this action was contrary to the terms under which Prudential's "agent sold the . . . life insurance policy to the Deyters in 1992." App. 36.

Based on these allegations, the Deyters asserted several claims for relief. The Deyters brought fraud claims based on the fact that they "lost the benefit of the bargain

7

which they made when they purchased the $400,000 policy because they were told when they purchased said policy that there would be enough cash value and accrued dividends in this policy after they paid ten annual premiums to pay subsequent premiums and that this policy would continue to have a face value of $400,000." App. 42. These misrepresentations were repeated in the year 2000. In addition, the Deyters also brought claims based on fraudulent misrepresentations with respect to the formation of the irrevocable trust, the 2000 policy, and the mutual fund.

Prudential sought to enjoin the Deyters from pursuing some of their claims in the Florida courts. The District Court granted the motion. Specifically, it enjoined the Deyters from prosecuting their claims:

> insofar as the Amended Complaint asserts claims or seeks damages based on, or relating to, the issues previously resolved in the Class Action Settlement, including, without limitation, engaging in motion practice, pursuing discovery, presenting evidence or undertaking any other action in furtherance of said action that in any way involves the facts and circumstances underlying the Released Transactions in the Class Action.

App. 4. In its opinion, the court clarified that the injunction did not prevent the Deyters from "asserting their claims for fraud and deception relating to the post-class 2000 policy, or relating to the agents' misrepresentations regarding the Deyter Family irrevocable life insurance trust, the high-yield mutual fund, or any of [the Deyters'] other pre/post-class accounts and policies." App. 13. This appeal followed.

II.

8

Under the All Writs Act, District Courts may "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. However, the Anti-Injunction Act, 28 U.S.C. § 2283, "is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 286 (1970). These exceptions allow a court to enter an injunction "as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The settled law of this case establishes that the "'aid of jurisdiction' exception . . . includes 'consolidated multidistrict litigation, where a parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation.'" Prudential: Lowe, 261 F.3d at 365; see also Prudential: La Marra, 314 F.3d at 103-05. In light of that authority, the Deyters do not seriously contend that the District Court lacked statutory power to enter the injunction.

Nonetheless, "the fact that an injunction *may* issue under the Anti-Injunction Act does not mean that it *must* issue." Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 151 (1988). "[P]rinciples of comity, federalism, and equity always restrain federal courts' ability to enjoin state court proceedings." In re Diet Drugs Products Liability Litig., 369 F.3d 293, 306 (3d Cir. 2004). Here, the Deyters claim "Prudential did not come to th[e] court with clean hands to entitle it to an equitable remedy." Deyter Brief 6. We review

9

the District Court's contrary conclusion for abuse of discretion.  See Prudential: Lowe, 261 F.3d at 363.

The Deyters' initial contention is that Prudential has "unclean hands because it did not present competent evidence to the District Court that it had given the Deyters (insureds) or their daughter (owner) timely notice of the Class Action."  Deyter Brief 16.  We find this argument unpersuasive for two reasons.  First, it appears to be incorrect as a factual matter.  The record indicates that Prudential mailed timely notice to the Deyters and their daughter, and the mailings were not returned as undeliverable.  Second, and more to the point, the Deyters are attempting to relitigate an issue we decided almost nine years ago in Prudential: Krell.  There, we approved the settlement's notice provisions and agreed with the District Court that "the comprehensive notice program in this case far exceeded the requirements of Rule 23 and due process."  148 F.3d at 327.  As prior panels of this court have noted, "[t]he adequacy of notice has been decided and affirmed on appeal, and is now the law of this case."  In re Prudential Ins. Co. of Am. Sales Practices Litig. ("Prudential: Kryk"), No. 00-1496 (3d Cir. Dec. 7, 2000) (unpublished opinion available at Supp. App. 408-16).  As a result, we must reject the Deyters' attempt to relitigate this issue by raising the specter of "unclean hands."

With respect to their claims based on the 1992 policy, the Deyters contend that since "Prudential committed fraud, deceit and misrepresentation . . . many years after the class period closed it was not entitled to an injunction from the District Court because it did not have clean hands."  Deyter Brief 18-19.  Relatedly, the Deyters assert that their

claims have nothing "at all to do with what the Prudential agent may have told them when he sold them this policy in 1992." Rather, the Deyters' claims focus on "the conduct of The Prudential employees who initiated contact with them in September 2000 . . . ." Id. 19. We disagree with that creative reframing of the Deyters' complaint. The complaint states that the "Prudential agent who sold the Deyters a $400,000 life insurance policy . . . in 1992 told them they would not have to pay premiums on that policy after they paid ten . . . annual premium payments." App. 21. It further alleges that the Deyters subsequently "lost the benefit of the bargain which they made when they purchased the $400,000 policy" in 1992. App. 42. As the District Court correctly stated, "[t]he benefit of the bargain they made came in the form of vanishing premiums." App. 12. The settlement agreement's broad release provision clearly bars such a claim. We therefore reject this argument.

Finally, the Deyters challenge the District Court's decision to enjoin them from relying on class evidence to bolster their non-class claims. The Deyters argue that the "knowledge which the Prudential had in 2000 regarding past fraudulent conduct" is relevant and material to show that Prudential failed "to prevent these employees from doing these same things to its insureds again . . . ." Deyter Brief 26. This line of argument is foreclosed by our prior precedent. In Prudential: Lowe, we held that the "Class Release . . . precludes class members from relying upon the common nucleus of operative facts underlying claims on the Class Policies to fashion a separate remedy against Prudential outside the confines of the Released Claims." 261 F.3d at 367. In light

11

of that holding, the District Court's injunction properly enforced the settlement agreement's express terms.

In sum, because the District Court's grant of injunctive relief was not an abuse of discretion, we will affirm. In doing so, we reiterate that the Deyters remain free to litigate "their claims for fraud and deception relating to the post-class 2000 policy, . . . the agents' misrepresentations regarding the Deyter Family irrevocable life insurance trust, the high-yield mutual fund, or any of [the Deyters'] other pre/post-class accounts and policies." App. 13.