BELSOME, J.
Concurs with Reasons.
| ] This writer is impressed with the efforts of the trial court to expeditiously resolve litigation that potentially impacts thousands of Louisiana eitizens. While class action litigation has been the preferred procedural vehicle to facilitate claims that are too cost-prohibitive to litigate individually, there is currently no legislation in Louisiana to direct courts or litigators regarding an appropriate forum when potentially similarly situated claims are pending in multiple jurisdictions. The absence of such a procedure inevitably resulted in the impassioned appeal in the instant case.[1] The trial judge, faced with determining whether the settlement proposal in this first-filed class action was fair and reasonable, painstakingly and carefully considered multiple factors routinely considered by courts at fairness hearings. The trial court discussed the evidence and testimony introduced during the five-day fairness hearing, at which time the court heard testimony from three experts, class representatives, class counsel, several proponents of the settlement, Land reviewed statements from the objectors.[2] After evaluating the extensive testimony and evidence, the trial court concluded that the settlement should be approved, and issued extensive and detailed Reasons for Judgment, addressing each and every issue raised by counsel for the competing class action. Although the trial court indisputably left no stone unturned in its deliberate and comprehensive Reasons for Judgment, as the majority notes, this judgment must be reversed. I reluctantly concur.
As the majority acknowledges, “[djespite the law’s predisposition in favor of settlements,” a trial court’s approval of a proposed class action settlement is reviewed under the abuse of discretion standard. Kent A. Lambert, Class Action Settlements in Louisiana, 61 La. L.Rev. 89, 127 (2000).[3] One reason that class action settlements are favored, by way of example, is that “[i]n Orleans Parish, the Civil District Court has seen on average more than 20,000 suits per year over the last decade with an upward trend.” Id. at n. 7. As an inevitable result, “[ejven one large class action suit ... can forestall justice to literally thousands of litigants in these overburdened state trial courts, as well as consume an inordinate amount of appellate *468 court resources.” Id. (citing Dawn M. Barrios, The Long and Winding Road for Spitzfaden, Louisiana’s Breast Implant Class Action: Ad Astra per Aspera, 74 Tul. L.Rev.1941 (2000)). Accordingly, class action settlements are the preferred means for the resolution of legal disputes, as “[c]lass action settlements offer obvious benefits to litigants and courts alike by providing a valuable mechanism for disposing of massive lawsuits that threaten to usurp huge amounts of resources and time.” Lambert, supra, at 89. Settlements are also favored in class action litigation because settlement “afford[s] members of Isplaintiffs’ classes with certainty in their recovery, while simultaneously providing class action defendants with the benefits of res judicata extended across an entire class of potential claimants.” Id.
The Federal Judicial Center’s Manual for Complex Litigation, relied upon by the federal courts presented with class action litigation, recognizes that a court’s inquiry should involve consideration of whether the class as a whole is better served by settlement; put another way, the court must determine “whether the settlement is fair, reasonable, and adequate from the perspective of the affected class members.” Id. at 100. The analysis will necessarily require the court to “be guided by the principal, perceived dangers posed by class action settlements,” such as “infringement of the rights of absent class members who may not have had a sufficient voice during the settlement negotiations” and also “the possibility of collusion between the parties that actually negotiated the settlement.” Id. This writer finds that the trial court exhaustively considered these factors, as well as notice, reach, due process, and a meticulous examination of the oft-cited Reed factors.[4]
In its Reasons for Judgment, the trial court first discussed the timeline: the action in the instant case was the first filed on October 6, 2005, and certified on June 6, 2008. Pursuant to a “Stipulation of Settlement” signed by the parties on October 1, 2008, the Court issued a Preliminary Approval Order on that date, directing issuance of a Notice to the Class, appointing a Claims Administrator, set the Fairness Hearing, and approved the Settlement Class definition. Finding that the class satisfied La. C.C.P. art. 592 requirements, the court directed notice of the Settlement Stipulation be sent to nearly 60,000 potential class members, with a deadline to object or opt out on December 11, 2008.
14At the Fairness Hearing, the trial court heard testimony from the first of the class representatives, Oscar McGee. The court, in its Reasons for Judgment, “accept[ed] Mr. McGee’s testimony as credible and reliable,” and “was impressed” with his “thoughtful testimony and knowledge of the litigation and the issues.”[5] The court relied upon Mr. McGee’s opinion that the terms of the settlement were in the best interest of the class and accordingly, he recommended the settlement to all class members, “unequivocally]” stating that the settlement was fair, considering the value of a settlement now weighted against the possibility of a verdict at trial; with regard to attorneys’ fees, he testified that he understood the defendant would pay attorneys’ fees, agreeing that 14.26% of the recovery should be paid to counsel attorneys.
Similarly, the trial court recognized Ms. Toni Swain Orrill’s statement that the set *469 tlement was fair and recommended it to all class members for at least three reasons: 1) it would allow them to move forward; 2) it was fair; and 3) it was in the interest of public policy to resolve the claims. The trial court further cited Ms. Orrill’s testimony that the attorneys’ fees were “well below what would normally [be demanded].” As the majority acknowledges, Ms. Orrill also testified that the settlement was a significant and symbolic way to allow Louisiana residents to move forward.
Testimony from Dennis McCartney, the Claims Administrator, was also cited by the trial court in its Reasons for Judgment. Mr. McCartney testified regarding notice, stating that the claims arising from the notice were nearly 18,000, suggesting that the class response to the notice was positive and that the class action procedure was the proper mechanism in this case. The trial court found that, pursuant to Louisiana law — which requires only that notice of dismissal or compromise be given to all class members so that absent members are allowed the ^opportunity to object or intervene — the validity of notice was verified, particularly since only two individuals[6] objected to the settlement, in comparison to the potential 18,000 who responded.
The trial court found that 60,940 notices were mailed; 12,058 valid claim forms were received; and only 609 valid opt-out forms were received. The trial court referenced Mr. McCartney’s determination that the undeliverable notices were approximately 11%, within the normal range for class actions, and that nearly 15,000 potential policy holders had opted out by filing their own claims. Citing La. C.C.P. art. 594, the trial court acknowledged its authority to determine the manner in which notice should be given, and whether or not the notice was effective, noting that “[s]everal witnesses testified as to whether the notice given in this case was proper.”
With regard to the notice issue, the court cited testimony of Todd B. Hilsee, presented by the objectors and accepted by the trial court as an expert in the field of communications and notice, who testified that he reviewed all the notices mailed, and discussed alternative methods used in locating class members, including publishing in the local newspapers or using web-based programs to determine whether mail actually reached the policyholder. The court, in its Reasons for Judgment, noted that Mr. Hilsee conceded that “problems with the notice were created by the intervention of counsel from a competing class action” and that Mr. Hilsee also “avoided discussion of the actual numbers which this court received in evidence from the claims administrator, Mr. Dennis McCartney.”
The court also acknowledged Roy Ama-dee, who was also presented by the objectors and accepted by the court as an expert in the field of class action [ (¡procedure and litigation, and who testified that, in his opinion, the settlement merged two separate causes of action and that the settlement of $1,000 per claimant was too low. However, the trial court noted that Mr. Amadee “admitted that there is uncertainty in all litigation and that settlements are favored in the law.” The trial court also *470 relied upon testimony from Emile Rolfs, an expert in class action practice and procedure, found that La. C.C.P. art. 592 was satisfied, as “the notice must be ‘desirous for those to receive it and must use the best method practicable.’ ” Mr. Rolfs further testified that the evidence that only 10-11% of the notices were returned indicated that the notice comported with due process. Most significantly, the trial court recognized that “no expert testified that the notice sent in this case failed to comply with La. C.C.P. art. 592,” and "all [experts] agreed that the controlling article on class action notice is La. C.C.P. art. 592.”
After concluding that the notice comported with due process requirements, the court turned to whether the proposed settlement was fair, first applying the “Reed Factors,” six factors employed by the court in Reed v. General Motors Corporation, 708 F.2d 170, 172 (5th Cir.1983). The six factors “to ensure that the settlement is in the best interest of the class, does not unfairly impinge on the rights and interests of dissenters, and does not merely mantle oppression,”[7] are:
(1) the existence of fraud or collusion behind the settlement;[8] (2) the complexity, expense, and likely duration of the litigation; (8) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs’ success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members.
Reed, 703 F.2d at 172 (citing Parker v. Anderson, 667 F.2d 1204, 1209 (5th Cir. 1982)). The trial court also assessed the fairness of the proposed settlement with comprehensive factors from Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir.1975). The nine Girsh factors, cited repeatedly in class action cases, are as follows:
“ ‘(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.’ ”
In re Insurance Brokerage Antitrust Litigation, 579 F.3d 241, 258 (3d Cir.2009) (quoting Girsh v. Jepson, 521 F.2d at 156).[9] In considering these factors, “the *471 court must reach ‘an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated’ based upon ‘an educated estimate of the complexity, expense, and likely duration of such litigation ... and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.’ ” Lambert, supra, at 112 (quoting Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968)). The court found that pursuant to both Girsh and Reed, the settlement was fair, reasonable, and adequate.
| «Complexity, Expense and Likely Duration of the Litigation
Applying the Girsh and Reed factors, the trial court first addressed the issue of the costs involved with proceeding to trial, conducting discovery, hiring expert witnesses, finding that litigation of claims “would be time-consuming, uncertain and expensive,” and that this factor weighed heavily in favor of settlement.
Reaction of the Class to the Settlement
The trial court noted that the instant case was the first filed of seventeen similar class actions, and that class counsel successfully certified two other classes for similar causes of action in other Louisiana courts; therefore, the court concluded that class counsel, who had conducted discovery and consulted experts “had an adequate appreciation of the merits of the case,” the value of the settlement, and the risk of litigation prior to negotiating the settlement. The court found that this factor also weighed heavily in favor of settlement.
The State of Proceedings and the Amount of Discovery
Again, the court recognized that the instant case was the first filed, and that one of the two other class actions in Louisiana filed by class counsel, Chalona, et al v. Louisiana Citizens Property Insurance Corporation, 2008-0257 (La.App. 4 Cir. 6/11/08), 3 So.3d 494, was subsumed by Orrill. Considering the extensive discovery, motion practice and pending litigation involving not only comparable claims but also the same defendant, and “the amount of time expended in negotiations and the extent of the discovery process,” the trial court found that class counsel plainly “had a thorough appreciation for the merits of the case prior to settlement.”
The Risks of Establishing Liability and Damages
The court noted that this inquiry involves a weighing of the likelihood of success and the possible disadvantages of going to trial as opposed to the benefits of settlement. Put another way, the court determined that “the risk is whether there 19should be an individual determination of each class member’s file to determine if *472 indeed the class member can establish their damages,” because an individual determination would indisputably “put the entire class action procedural device at risk.” The court found that this factor weighed strongly in favor of settlement.
The Risks of Maintaining the Class Action Through Trial
The trial court cited Reed v. Louisiana Citizens Property Insurance Corporation, (La.App. 4 Cir. 3/5/08), 980 So.2d 754 as a risk that class certification might not be maintained through trial. At that time, the Louisiana Supreme Court had not ruled upon this Court’s determination that Citizens was not immune from penalties; however, the Louisiana Supreme Court has since denied writs in Reed. Reed v. Louisiana Citizens Property Ins. Corp., 2008-0744, 2008-0748 (La.10/24/08), 25 So.3d 777.[10]
The Ability of the Defendants to Withstand Greater Judgment
The defendant, Citizens, deposited the total funds available, $35,000,000.00, in the registry of the court. Although Citizens did not appear to be in danger of developing financial problems, the trial court found that “to withhold approval of a settlement of this size because the defendants could withstand a greater judgment would make little sense.”[11]
In its Reasons for Judgment, the trial court also considered this factor in light of testimony from the Insurance Commissioner of the State of Louisiana, Jim Done-Ion, who was accepted by the court as an expert in the field of insurance and insurance regulation. The trial court noted that Mr. Donelon testified regarding losses that produce claims which exceed cash flow, causing all insurance companies with policies in Louisiana to be assessed part of the loss. Likewise, when a settlement is reached that exceeds cash flow, individual policyholders may | inbenefit; however, because funding for Louisiana Citizens is comprised of all citizens of Louisiana, not merely policyholders, the settlement would effectively be funded by all citizens of the State of Louisiana. The trial court further cited Mr. Donelon’s testimony that the present proposed settlement did not exceed cash flow and could thus be disbursed without the necessity of assessing a shortfall to all policyholders in Louisiana; therefore, the settlement compensated the majority of victims adequately, particularly considering the opt-out provision for individuals who wished to file suit.
The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of all the Attendant Risks of Litigation
Considering these final factors, the trial court referenced the testimony and evidence that if a settlement of more than $1,000 per class member were reached, the costs would be assessed to policyholders themselves or all Louisiana policyholders. The court cited In re Cendant Corp. Sec. Litig., 109 F.Supp.2d 235, 263 (D.N.J.), noting “[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.” Rather, “[t]he percentage recovery [ ] must represent a material percent *473 age recovery to plaintiff in light of all the risks considered under Girsh.” Id.
La. C.C.P. art. 595
The trial court then turned to La. C.C.P. art. 595 in its Reasons for Judgment, applying the facts of the case to the factors a court to consider when awarding fees. The court considered the size of the fund created and the number of persons to benefit; [12] the presence or absence of substantial objections received by Inmembers of the class to settlement terms and/or fees requested by counsel;[13] the skill and efficiency of the attorneys;[14] the complexity and duration of the litigation;[15] the risk of non-payment;[16] the amount of time devoted to the litigation;[17] awards in similar cases;[18] and incentive awards for named plaintiffs/class representations.[19] Considering each of these factors in detail, the court found that $5,000,000.00 in fees to class counsel, as well as the settlement of *474 $30,000,000.00 for class members, including a future separate amount in costs, “represent[ed] an excellent result for the Class considering the substantial risks that Plaintiffs face.”
It is readily apparent that, in determining whether the proposed settlement was fair, reasonable, and adequate, the trial court appropriately “devote[d] the majority of [its] attention to determining the size of the settlement viewed against the risks of litigation.” Lambert, supra, at 114. “It is indeed the rare settlement that offers the plaintiff class everything it could reasonably have expected to [^recover had the case gone its way at trial.” Id. Pursuant to this analysis, “this inquiry tends to degenerate into scrutiny of the plaintiffs’ chances of prevailing, with the court attempting to look behind the business judgment of the negotiating parties to test the soundness of the fruit of their efforts-all without purporting to decide the merits.” Id. Considering the role of class counsel, “court[s] must be cognizant of the fact that these attorneys may not share the same agenda as the court.” Id. Accordingly, “[i]f the court perceives significant risks against ultimate success, then a modest settlement offer may appropriately be considered fair, reasonable, and adequate.” Id. This writer respectfully submits that this is precisely the process employed by the trial court’s detailed analysis in the instant case.
Nevertheless, despite the trial court’s detailed and thorough analysis, careful consideration, and sound logic, the court’s articulate and well-reasoned decision regarding this first-filed litigation cannot stand. No matter how correct and just, the competing, and potentially overlapping, claims in other jurisdictions destined the trial court’s judgment in this case to be invalidated. As previously noted herein, the lack of procedural guidelines for multi-parish litigation at the time the trial court considered this matter evidences precisely the type of injustice for citizens in multiple parishes of Louisiana that can result from such a significant omission of procedures and safeguards.
Finally, this writer finds that the current procedural posture of this matter could have been avoided by simply filing a motion to transfer and consolidate the matter to the first filed action, and by removing apparent personality conflicts from what should have been litigation focused solely upon the best interests of the insureds of Louisiana who suffered great losses from Hurricanes Katrina and Rita.

.Duplicative, competing class actions have generally presented conflict between federal and state courts. See Matsushita Electric Industrial Co., Ltd., 516 U.S. 367, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996); In re Prudential Ins. Co. of America Sales Practices Litigation, 314 F.3d 99, 106 (3d Cir.2002)(noting that "in the modern era of civil litigation, there has been a sea [of] change in the nature of complex litigation involving class actions and the aggregation of individual cases and also in the complex relationship between federal and state jurisdiction, especially regarding dupli-cative and competing class actions” and "the problems arising from duplicative or competing nationwide class actions applying the laws of particular states to passive litigants in other states are evident”).

. None of the objectors testified at the fairness hearing.

. (citing Maywalt v. Parker & Parsley Petr. Co., 67 F.3d 1072, 1078 (2d Cir.1995); DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1176-77 (8th Cir.1995); and In re Corrugated Container Antitrust Litig., 643 F.2d 195, 218 (5th Cir.), aff'd by 659 F.2d 1337 (5th Cir. 1981)).

. Reed v. General Motors Corporation, 703 F.2d 170 (5th Cir.1983).

. As the majority notes, the trial court acknowledged that Mr. McGee was a military veteran and the recent recipient of a law degree.

. The trial court also noted that neither of the two objectors testified at the hearing, "but [] voiced their objections through counsel from a competing class action.” These two objectors, Daryl Robert and Bruce Scharwath, asserted that the settlement provides only one recovery for two groups of claimants; those who claim late payment have a claim for $1,000, while those individuals claiming late adjustment seek $5,000. The other two objectors, Allen and Monica Markey, filed an Ami-cus Objection and Notice of Intent to Appear; however, neither objector nor their counsel appeared at the fairness hearing.

. Reed v. General Motors Corporation, 703 F.2d 170, 172 (5th Cir.1983)(quoting Pettway v. American Cast Iron Pipe Co., 576 F.2d 1157, 1214 (5th Cir.1978)).

. With respect to the Reed factors, the trial court acknowledged Suzanne Dondeville’s testimony regarding the lack of any fraud or collusion during settlement negotiations in its Reasons for Judgment. Ms. Dondeville, the Director of Litigation for Louisiana Citizens, testified that she was not aware of prior relationships between counsel, and that the negotiations were arms length and occurred over the course of three to four days. Additionally, with respect to notice, Ms. Dondeville testified that the database of policyholders provided to the claims administrator included all policyholders, regardless of whether a claim was made for Hurricane Katrina or Rita damages. Finally, with regard to the complexity, expense, and duration of the litigation, Ms. Dondeville testified that the defense costs of litigation to Citizens was $5,000 to $6,000 per week and that resolution of the claims would benefit all parties.

.In undertaking this difficult analysis, the federal courts have identified a myriad of factors that, under the particular circumstances of a given case, may bear upon the appropriateness of approving a proposed *471 class-action settlement. These include: (1) “the complexity, expense, and likely duration of the litigation”; (2) the reaction of the class members to the proposed settlement, including the number of objectors; (3) the reasonableness of the consideration offered to the class in light of the best possible recovery if the case were litigated, with appropriate allowances accounting for the risks of establish-mg liability and damages, and for other potential contingencies during litigation; (4) the defendant’s ability to withstand a judgment affording a greater recovery; (5) the possibility of whether insurance proceeds have buttressed the consideration offered to the class and, if so, whether there is a risk that litigating the class’s claims could result in a denial of recovery (and what effect this would have upon the defendant’s ability to satisfy an adverse judgment); (6) the practical merit of the pr0posed plan of distribution; (7) the impact the settlement may have upon other rights or ⅛ of the class members against *e defendants; and (8) the views 0f class counsel,
Lambert, Class Action Settlements in Louisiana, 61 La. L.Rev. at 112-113 (citations omitted).

. Although the denial of writs in Reed v. Louisiana Citizens Property Insurance Corporation, (La.App. 4 Cir. 3/5/08), 980 So.2d 754, is dated October 24, 2008, due to a clerical error, the decision was not released to the parties by the Louisiana Supreme Court until December 17, 2009.

. (quoting In re Automotive Refinishing Paint Antitrust Litig., MDL No. 1426, 2004 U.S. Dist. LEXIS 29161, at *22 (E.D.Pa. Sept. 27, 2004)).

. The trial court found that, in recovering a common fund for the benefit of the class, with Citizens’ agreement to pay attorneys’ fees, class counsel "was able to obtain the significant result of $30,000,000.00, plus notice and administration costs, attorney's fees and reimbursement expenses up to $200,000.00, despite the substantial risks of establishing liability and damages." The court also noted that “a significant number of people are expected to benefit from this award considering the expected 18,000 claim forms, of which more than 13,000 have already been received.”

. As previously noted herein, and as acknowledged by the trial court with respect to this inquiry, ”[t]here were only two (2) objectors to the settlement, both of whom never gave testimony and were at all times represented by counsel for a competing class action.”

. The trial court found that class counsel and counsel for Citizens were both represented by highly skilled attorneys.

. As previously discussed, the trial court reiterated that class counsel had engaged in "extensive discovery and motion practice,” and that the matter "involved the complexities of measuring damages, establishing class-wide liability, and monitoring closely the ever changing property damage jurisprudence," resulting in "a costly and lengthy process for all the parties" to litigate.

. Because class counsel was employed on a contingency fee basis, "without any guarantee of success or award,” the trial court found that "this factor weighs heavily in favor of approval of the fees and costs negotiated by the settling parties.”

. As one of seventeen similar actions against Citizens, the trial court found that "class counsel demonstrated in this court by motion practice alone that a very significant portion of their time for the past 3 + years was devoted to the prosecution of this case.” Additionally, the court acknowledged the record of over twelve volumes, the "highly contested nature of the litigation," as evidence that "an exorbitant amount of time has been devoted to this cause.”

. The trial court considered “comparison of the actual award requested to other awards in comparable settlements” and also made great efforts to ”ensure[] that the awards [were] consistent with what an attorney would have received if the fee were negotiated on the open market.” Therefore, the court concluded that costs of $200,000 and the negotiated fee of $5 million, or 16.7% of $30,000,000.00, was reasonable, as “[fjederal courts often award fees of 25% to 33 1/3% of the recovery.” (citing In re Remeron Direct Purchaser Antitrust Litig. No. 0300085, 2005 WL 3008808 at *15-16, 2005 U.S. Dist. LEXIS 27013 at *44 (D.NJ. Nov., 2005)). The court also cited three cases in which a court in the same judicial district awarded class counsel 40% of the total recovery, (citing Waters, et al. v. Louisiana Department of Social Services, et al., No. 2001-17775, 2003 WL 25802326 "J", writ denied, 2009-1651, (La. 10/30/09), 21 So.3d 291; Brown, et al. v. Credit Suisse First Boston Corp., et al., No. 2002-13738 "A”; and Powell, et al v. Credit Suisse First Boston Corp., et al, No. 2004-11069 "A”).

. Incentive awards in this case for the class representatives were $15,000.00 each for a total of $5,000.00, amounts negotiated by the parties. The trial court recognized that the *474 testifying class representative stated that "a significant amount of their own time and expense litigating these cases over three (3) years for the benefit of absent members of the settlement class” was expended, and that this amount was uncontested by Citizens at trial. Accordingly, the trial court approved the payments for the class representatives on this basis.