RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0401p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LORILLARD TOBACCO COMPANY, et al.,
                              *Plaintiffs-Appellees,*

            *v.*

                                                        No. 07-3589

CHESTER, WILLCOX & SAXBE, LLP, et al.,
                              *Defendants-Appellants.*

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 04-00715—Edmund A. Sargus, Jr., District Judge.

Argued: September 17, 2008

Decided and Filed: November 13, 2008

Before: CLAY and COOK, Circuit Judges; OLIVER, District Judge.[*]

---

## COUNSEL

**ARGUED:** John A. DeVault III, BEDELL, DITTMAR, DeVAULT, PILLANS & COXE, Jacksonville, Florida, for Appellants. Thomas W. Hill, KEGLER, BROWN, HILL & RITTER, Columbus, Ohio, for Appellees. **ON BRIEF:** John A. DeVault III, Patrick P. Coll, BEDELL, DITTMAR, DeVAULT, PILLANS & COXE, Jacksonville, Florida, William James Pohlman, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Appellants. Thomas W. Hill, Christopher J. Weber, KEGLER, BROWN, HILL & RITTER, Columbus, Ohio, Dale C. Christensen, Jr., John J. Galban, SEWARD & KISSEL, New York, New York, for Appellees.

---

## OPINION

---

CLAY, Circuit Judge. Plaintiffs, Lorillard Tobacco Company, Phillip Morris USA Inc., and R.J. Reynolds Company, brought this interpleader action against a number of attorneys, including

---

[*]The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

the five Defendants-Appellants ("Florida Counsel"),[1] to determine the proper recipients of four annual $125 million payments that Plaintiffs agreed to pay as part of an attorneys' fee agreement related to the 1998 tobacco settlement. Florida Counsel, five law firms that represented the State of Florida in the tobacco litigation, appeal the district court's order overruling their objections to claims to the proceeds of the settlement of the interpleader action by five limited liability companies and Deutsche Bank Trust Company of America ("Deutsche Bank"). For the reasons that follow, we **REVERSE** the district court's ruling and **REMAND** for further proceedings.

## BACKGROUND

### I.     The Fee Payment Agreements

In the 1990s, a number of states filed lawsuits against tobacco companies, seeking damages for the states' treatment of smoking-related illnesses. In 1997 and 1998, Plaintiffs entered settlement agreements with the states, many of which were represented by private counsel. Mississippi, Texas and Florida were the first states to initiate the suits and the first states to settle, and as part of these first three settlements, Plaintiffs entered fee payment agreements with the private counsel representing the three states ("MTF Counsel"). In September 1998, Florida's outside counsel entered a Florida Fee Payment Agreement ("Florida FPA") with Plaintiffs. Like the fee payment agreements entered by counsel for Mississippi and Texas, the Florida FPA called for a panel of arbitrators to determine the fee award for Florida's outside attorneys. Pursuant to the three fee payment agreements, in December 1998, a panel of arbitrators awarded a total of approximately $8.17 billion to MTF Counsel, including a fee award for Florida's outside counsel of approximately $3.43 billion. The three fee payment agreements anticipated that private counsel from other states would have to be paid once those states settled; the agreements therefore required Plaintiffs to make quarterly payments of $125 million until the fees of all states' private counsel were paid, including the $8.17 billion owed to MTF Counsel. Each counsel would receive a pro rata share of each quarterly payment, based on the outstanding balance owed to the counsel as a percentage of the total outstanding balance of fees owed to all private counsel.

In November 1998, Plaintiffs entered a Master Settlement Agreement ("MSA") with forty-six states and territories to settle the remaining tobacco lawsuits. Pursuant to the MSA, Plaintiffs entered a Model Fee Payment Agreement ("Model FPA") with the states to structure the payment of attorneys' fees to outside counsel for the forty-six jurisdictions. Under the terms of the Model FPA, each jurisdiction's private counsel could either receive a negotiated payment from Plaintiffs up front (a "liquidated fee"), or elect to arbitrate and be paid an arbitration award by receiving a pro rata share of the $125 million quarterly payments which Plaintiffs had already committed to paying. The Model FPA required Plaintiffs to set aside $1.25 billion for the private counsel who negotiated liquidated fees, and to pay in full all liquidated fees by the end of 2003.

Plaintiffs negotiated liquidated fees with counsel from approximately twenty-one jurisdictions, while counsel from the remaining jurisdictions opted for arbitration and a pro rata share of the quarterly payments. Counsel from the states and territories that opted for arbitration received a total award of approximately $6.08 billion; including the fee awards to MTF Counsel, Plaintiffs' total arbitration fee payments totaled approximately $14.25 billion. Plaintiffs' liquidated fees to the twenty-one jurisdictions that negotiated such fees totaled approximately $625 million.

---

[1] The five Defendants appealing the district court's order include Terrell Hogan Ellis Yegelwel, P.A.; Fonvielle Hinkle & Lewis, P.A.; Law Office of W.C. Gentry, P.A.; Maher, Guiley & Maher, P.A.; and Nance, Cacciatore, Hamilton, Barger, Nance & Cacciatore. Although there were a total of eleven outside counsel representing Florida, the other six outside counsel are not relevant to this appeal. The five Florida counsel appealing the district court's order are collectively referred to as "Florida Counsel."

Pursuant to the Model FPA, Plaintiffs were required to use the remaining $625 million of the $1.25 billion that it had earmarked for liquidated fees as "supplemental payments" to the arbitration fee award recipients, in addition to the $125 million quarterly payments. Plaintiffs were to make the supplemental payments in five annual installments of $125 million in the fourth quarter of every calendar year beginning in 2004. All of Plaintiffs' payments were to be made without interest and were unsecured.

In 2001, rather than accept periodic, unsecured, non-interest bearing payments, Florida Counsel sold their interest in the fee award for a lump sum at a discounted price. As part of this transaction, each Florida Counsel formed a limited liability company ("LLC") and assigned its interest in the fee award to the LLC. The LLCs then issued and sold secured notes to public investors, with the proceeds going to Florida Counsel in exchange for their interest in the attorneys' fees. Additionally, the LLCs pledged their interest in the fee payments to Deutsche Bank, the indenture trustee, as collateral to secure payment of the principal and interest on the notes. Upon forming the LLCs, each Florida Counsel sold its interest in its LLC to an outside investor.

## II.    The Interpleader Action

In 2004, a dispute arose concerning the supplemental payments that Plaintiffs were required to make to arbitration fee award recipients in the fourth quarters of 2004 through 2008. To resolve the dispute, Plaintiffs filed a class action suit for interpleader relief on August 5, 2004. The complaint alleged that MTF Counsel claimed a right to the supplemental payments, even though the fee payment agreements with Mississippi, Texas and Florida did not mention the supplemental payments. The complaint further alleged that the non-MTF Counsel who had entered the Model FPA and received fee awards in arbitration claimed that MTF Counsel were not entitled to the supplemental payments. The complaint named, as the two classes of defendants, MTF Counsel and the non-MTF Counsel who were entitled to arbitration fee awards. Upon filing their complaint, Plaintiffs deposited approximately $66.34 million–the amount of the 2004 supplemental payment claimed by MTF Counsel as their pro rata share–into the district court's registry.

On September 10, 2004, Florida Counsel filed an answer in which they argued that

> [f]or the protection of the Plaintiffs and for the benefit of all "Private Counsel" retained by states and territories in connection with any "Tobacco Case" (defined as *any* tobacco and health case), the Mississippi, Texas and Florida Fee Payment Agreements set forth a national single payment schedule with quarterly aggregate national caps and the allocation of such proportionally between all Private Counsel having unpaid fees. In essence, the combination of provisions treats all Private Counsel equally and, therefore, operates as a "Most Favored Nations" clause for the benefit of all Private Counsel.

(Joint Appendix ("J.A.") at 271-72) (emphasis supplied). Citing the Model FPA, Florida Counsel noted that "any portion of the $1.25 billion that was not used to 'liquidate fees' was expressly designated to be paid into the arbitrated fee fund for payment of fees of 'each Private Counsel' who elected for arbitration." (J.A. at 256) Florida Counsel contended that because "Private Counsel" is defined in the Model FPA as "all private counsel for all plaintiffs in a Tobacco Case (including State outside counsel)" (J.A. at 274), Florida Counsel were entitled to a share of the supplemental payments, based on the combined structure of the Florida FPA, the MSA and the Model FPA.

In the alternative, Florida Counsel asserted a counterclaim against Plaintiffs, alleging that if the district court found that Florida Counsel were not entitled to share in the supplemental payments, "then Plaintiffs have breached their express agreement as well as their implied covenant

of good faith and fair dealing with Florida Counsel" in promising that Florida Counsel would share equally in all future attorneys' fee payments. (J.A. at 257)

In December 2004, the parties reached a settlement in the interpleader action (the "Settlement"). MTF Counsel agreed to be paid half of the $66.34 million that they claimed from the 2004 supplemental payment and half of their pro rata share of the next four supplemental payments, with the remainder paid to the other states' private counsel who took arbitration awards. The district court granted Plaintiffs' motion for certification of the two classes of Defendants and Plaintiffs' motion for preliminary approval of the Settlement. On January 10, 2005, following a fairness hearing, the district court granted final approval of the Settlement. Pursuant to the Settlement, all parties claiming a share of the Settlement then filed acknowledgment forms with the district court.

Deutsche Bank and the LLCs, contending to be the assignees of the entirety of Florida Counsel's fee award, filed acknowledgment forms. Florida Counsel objected, contending that Deutsche Bank and the LLCs were not entitled to the supplemental payments because the supplemental payments did not arise specifically from the Florida FPA. The district court overruled the objection on the ground that Florida Counsel were judicially estopped from denying that the LLCs and Deutsche Bank were entitled to the supplemental payments under the Florida FPA. The district court noted that in their answer to Plaintiffs' complaint,

> Florida counsel argued that the "Most Favored Nation" clause contained in the Florida Fee Payment Agreement anticipated that counsel for the State of Florida would obtain treatment at least as favorable as that of other counsel, *i.e.*, MSA counsel, in their settlement with the Tobacco Companies. Florida counsel also asserted a counterclaim against [the] Tobacco [Companies] for breach of the Florida Fee Payment Agreement and the implied covenant of good faith and fair dealing under that same agreement "to the extent the Court determines that only MSA counsel are entitled to share in the 'Supplement' . . . ." Now Florida counsel literally have taken the opposite position, asserting that the Supplement and Future Supplements have no relation to the Florida Fee Payment Agreement and are entirely a product of the MSA. The stark contrast in the earlier position of Florida counsel with the present position is significant.

(J.A. at 2122) The district court therefore accepted the acknowledgment forms filed by the LLCs and Deutsche Bank. Florida Counsel now timely appeal.

## DISCUSSION

### I.       Judicial Estoppel

This Court reviews a district court's application of judicial estoppel under a *de novo* standard of review. *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004); *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002). Appellees urge this Court to adopt the abuse of discretion standard based on the Supreme Court's statement in *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quotations and citation omitted), that judicial estoppel is "an equitable doctrine invoked by the court at its discretion." However, the Supreme Court did not instruct that an abuse of discretion standard is appropriate, and this Court has continued to adhere to the *de novo* standard after *New Hampshire*. *See Eubanks*, 385 F.3d at 897; *Browning*, 283 F.3d at 775. Without a more definitive statement from the Supreme Court, this Court is bound by its own precedent and will therefore apply the *de novo* standard to the district court's order.

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire*, 532 U.S. at 749 (quotations and citation omitted). "Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Indus., Inc. v. Nat'l Labor Relations Board*, 911 F.2d 1214, 1217-18 (6th Cir. 1990). "The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning*, 283 F.3d at 775 (quoting *Teledyne*, 911 F.2d at 1218). A court should also consider whether the party has gained an unfair advantage from the court's adoption of its earlier inconsistent statement. *New Hampshire*, 532 U.S. at 751. Although there is "no set formula for assessing when judicial estoppel should apply," *In re Commonwealth Institutional Sec.*, 394 F.3d 401, 406 (6th Cir. 2005), it is well-established that at a minimum, "a party's later position must be 'clearly inconsistent' with its earlier position[]" for judicial estoppel to apply, *New Hampshire*, 532 U.S. at 750 (citation omitted). Moreover, the doctrine of judicial estoppel "is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Teledyne*, 911 F.2d at 1218.

In their answer to the interpleader complaint, Florida Counsel argued that the Florida FPA, along with the Mississippi and Texas fee payment agreements, set quarterly aggregate national caps on Plaintiffs' payments of arbitration awards, and included a "Most Favored Nations" clause requiring that those payments be allocated proportionally among all private counsel who went to arbitration, including MTF Counsel. Based on this argument, the district court found that Florida Counsel initially premised their claim to the supplemental payments on the Florida FPA. Later, when Florida Counsel opposed the acknowledgment forms submitted by Deutsche Bank and the LLCs–on the ground that the supplemental payments were not based on the Florida FPA, but rather the Model FPA and the MSA–the district court found that Florida Counsel took clearly inconsistent positions and were judicially estopped from doing so.

However, Florida Counsel's argument is not that their rights to the supplemental payments arose solely from the Florida FPA, but rather that their right to equal treatment with all of the other private counsel who received an arbitration award arose from the Florida FPA. Florida Counsel further contend that while their right to equal treatment arose from the Florida FPA, the supplemental payment did not become due under the Florida FPA, but rather under the Model FPA. Florida Counsel maintain that they only pledged to Deutsche Bank and assigned to the LLCs their right to payments that became due under the Florida FPA, and therefore, the supplemental payments were not included. Regardless of the merits of this argument, there is no inconsistency, and certainly no *clear* inconsistency, with respect to Florida Counsel's initial position and their basis for later opposing the acknowledgments filed by the LLCs and Deutsche Bank. *See Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 382 (6th Cir. 1998) (rejecting the application of judicial estoppel where litigant's assertions were "not necessarily inconsistent" and "open to interpretation").

The district court also found that Florida Counsel's counterclaim in the alternative against Plaintiffs for breach of the Florida FPA was clearly inconsistent with their claims that the supplemental payments were due under the Model FPA and not the Florida FPA. "A party may set out [two] or more statements of a claim or defense alternatively or hypothetically," and "may state as many separate claims or defenses as it has, regardless of inconsistency." Fed. R. Civ. P. 8(d)(2),(3). Florida Counsel's counterclaim alleged that if the court found that the MSA and the Model FPA did not provide for Florida Counsel to share in the supplement payments, then Plaintiffs

would have breached Florida Counsel's right to equal treatment arising from the Florida FPA by making the supplemental payments to non-MTF Counsel only. Deutsche Bank argues that this demand for equal treatment is equivalent to Florida Counsel claiming an independent right to the supplemental payments from the Florida FPA, but Florida Counsel's counterclaim based on the Florida FPA did not specifically seek payment of the supplemental payments. Rather, the counterclaim sought damages arising from Plaintiffs' failure to fulfill its promise that it would treat all fee award recipients equally. While that distinction may be subtle and may be ultimately without merit, it is not "clearly inconsistent" with any other position taken by Florida Counsel in this litigation. *See New Hampshire*, 532 U.S. at 750.

Because Florida Counsel's objections to the acknowledgment forms were not clearly inconsistent with their claim that the Florida FPA mandates their equal treatment with non-MTF Counsel, this Court need not reach the question of whether the district court "adopted" Florida Counsel's earlier statement. *See Browning*, 283 F.3d at 776-77 ("Because the [contrary earlier position] requirement for the application of judicial estoppel has not been met, we need not reach the second requirement[.]"). Florida Counsel are not judicially estopped from objecting to the acknowledgments.

## II.     Merits of Florida Counsel's Objections

Deutsche Bank and the LLCs argue that even if the district court erroneously applied judicial estoppel in denying Florida Counsel's objections, this Court may still affirm the district court's order on the merits of the objections. "The prevailing party may, of course, assert in a reviewing court any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court." *Dandridge v. Williams*, 397 U.S. 471, 476 n.6 (1970). In such cases, this Court "may properly review any reason advanced by [appellee] in support of the district court's [order] that was presented to the district court." *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 349 n.3 (6th Cir. 1998).

However, given the complexity and the number of contracts involved in this case–the three fee payment agreements with MTF Counsel, the MSA, the Model FPA, and the agreements establishing the LLCs and Florida Counsel's transfer of payment rights–this Court would benefit from the district court's interpretation of these agreements. The district court's greater familiarity with the details and background of the case is further reason to allow it to rule on the issues presented. Moreover, because the district court found that judicial estoppel applied to the objections, discovery did not proceed, and Florida Counsel argues that discovery would show that both Florida Counsel and the LLCs understood the assignments to exclude the supplemental payments. Therefore, although a resolution of this matter may be possible based on a review of the applicable agreements, prudence dictates that this Court ought not do so here, but remand the case for further development of the record in the district court.

### CONCLUSION

For the reasons stated herein, this Court **REVERSES** the district court's order overruling Florida Counsel's objections and **REMANDS** to the district court for further proceedings consistent with this opinion.