*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0435p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

LORILLARD TOBACCO COMPANY et al.,
                              *Plaintiffs*,

            v.

CHESTER, WILLCOX & SAXBE et al.,
                              *Defendants*.

No. 08-4383

_____

W.C. GENTRY, P.A., f.k.a. Gentry, Phillips &
Hodak, P.A.; GENTRY AND PHILLIPS, P.A.;
and  GP (FL) FUNDING, III, LLC,
                    *Defendants-Appellants*,

            *v*.

LESTER G. FANT, III; GP (FL) FUNDING II,
LLC; GALWAY II, INC.; GALWAY T-1, LLC;
and GALWAY PARTNERS, LLC,
                              *Appellees*.

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 04-00715—Edmund A. Sargus, Jr., District Judge.

Argued:  December 1, 2009

Decided and Filed:  December 23, 2009

Before:  GILMAN and KETHLEDGE, Circuit Judges; BERTELSMAN, District Judge.[*]

_____

[*] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

———————————

**COUNSEL**

**ARGUED:** John A. DeVault, III, BEDELL, DITTMAR, DeVAULT, PILLANS & COXE, P.A., Jacksonville, Florida, for Appellants. Thomas W. Hill, KEGLER, BROWN, HILL & RITTER, Columbus, Ohio, for Appellees. **ON BRIEF:** John A. DeVault, III, Patrick P. Coll, BEDELL, DITTMAR, DeVAULT, PILLANS & COXE, P.A., Jacksonville, Florida, for Appellants. Thomas W. Hill, Christopher J. Weber, KEGLER, BROWN, HILL & RITTER, Columbus, Ohio, for Appellees.

———————————

**OPINION**

———————————

RONALD LEE GILMAN, Circuit Judge. This case arises from a statutory interpleader class action brought to determine the rights of various private counsel to certain attorney fees awarded in the nationwide tobacco litigation of the late 1990s. Several major tobacco companies and a class of private counsel involved in the litigation entered into a Settlement Agreement that was approved in a final judgment entered by the United States District Court for the Southern District of Ohio. In that judgment, the court enjoined the parties and class members from bringing any further claims relating to the subject matter of the Settlement Agreement. One of the class members, who had participated in the tobacco litigation in Florida, later filed a complaint in a Florida state court that raised matters relating to its entitlement to the funds at issue in the interpleader action.

The district court enjoined the parties to the state-court litigation from proceeding with that action, concluding that they were prohibited from doing so by the permanent injunction entered in the interpleader case. Florida counsel appeals, claiming that the new injunction exceeds the scope of the Settlement Agreement and violates the Anti-Injunction Act. For the reasons set forth below, we **AFFIRM** the order of the district court enjoining the parties from proceeding in the state-court litigation.

## I. BACKGROUND

### A.     Prior appeal

This case is on appeal to the Sixth Circuit for the second time.  The relevant factual and procedural background was set forth in the prior decision, *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, LLP*, 546 F.3d 752 (6th Cir. 2008), and is reproduced below.

#### *[1].  The Fee Payment Agreements*

In the 1990s, a number of states filed lawsuits against tobacco companies, seeking damages for the states' treatment of smoking-related illnesses.  In 1997 and 1998, Plaintiffs [Lorillard Tobacco Company, Philip Morris USA Inc., and R.J. Reynolds Company] entered settlement agreements with the states, many of which were represented by private counsel.  Mississippi, Texas and Florida were the first states to initiate the suits and the first states to settle, and as part of these first three settlements, Plaintiffs entered fee payment agreements with the private counsel representing the three states ("MTF Counsel").  In September 1998, Florida's outside counsel entered a Florida Fee Payment Agreement ("Florida FPA") with Plaintiffs.  Like the fee payment agreements entered by counsel for Mississippi and Texas, the Florida FPA called for a panel of arbitrators to determine the fee award for Florida's outside attorneys.  Pursuant to the three fee payment agreements, in December 1998, a panel of arbitrators awarded a total of approximately $8.17 billion to MTF Counsel, including a fee award for Florida's outside counsel of approximately $3.43 billion.  The three fee payment agreements anticipated that private counsel from other states would have to be paid once those states settled; the agreements therefore required Plaintiffs to make quarterly payments of $125 million until the fees of all states' private counsel were paid, including the $8.17 billion owed to MTF Counsel.  Each counsel would receive a pro rata share of each quarterly payment, based on the outstanding balance owed to the counsel as a percentage of the total outstanding balance of fees owed to all private counsel.

In November 1998, Plaintiffs entered a Master Settlement Agreement ("MSA") with forty-six states and territories to settle the remaining tobacco lawsuits.  Pursuant to the MSA, Plaintiffs entered a Model Fee Payment Agreement ("Model FPA") with the states to structure the payment of attorneys' fees to outside counsel for the

forty-six jurisdictions. Under the terms of the Model FPA, each jurisdiction's private counsel could either receive a negotiated payment from Plaintiffs up front (a "liquidated fee"), or elect to arbitrate and be paid an arbitration award by receiving a pro rata share of the $125 million quarterly payments which Plaintiffs had already committed to paying. The Model FPA required Plaintiffs to set aside $1.25 billion for the private counsel who negotiated liquidated fees, and to pay in full all liquidated fees by the end of 2003.

Plaintiffs negotiated liquidated fees with counsel from approximately twenty-one jurisdictions, while counsel from the remaining jurisdictions opted for arbitration and a pro rata share of the quarterly payments. Counsel from the states and territories that opted for arbitration received a total award of approximately $6.08 billion; including the fee awards to MTF Counsel, Plaintiffs' total arbitration fee payments totaled approximately $14.25 billion. Plaintiffs' liquidated fees to the twenty-one jurisdictions that negotiated such fees totaled approximately $625 million. Pursuant to the Model FPA, Plaintiffs were required to use the remaining $625 million of the $1.25 billion that it had earmarked for liquidated fees as "supplemental payments" to the arbitration fee award recipients, in addition to the $125 million quarterly payments. Plaintiffs were to make the supplemental payments in five annual installments of $125 million in the fourth quarter of every calendar year beginning in 2004. All of Plaintiffs' payments were to be made without interest and were unsecured.

In 2001, rather than accept periodic, unsecured, non-interest bearing payments, Florida Counsel [Terrell Hogan Ellis Yegelwel, P.A.; Fonvielle Hinkle & Lewis, P.A.; Law Office of W.C. Gentry, P.A.; Maher, Guiley & Maher, P.A.; and Nance, Cacciatore, Hamilton, Barger, Nance & Cacciatore] sold their interest in the fee award for a lump sum at a discounted price. As part of this transaction, each Florida Counsel formed a limited liability company ("LLC") and assigned its interest in the fee award to the LLC. The LLCs then issued and sold secured notes to public investors, with the proceeds going to Florida Counsel in exchange for their interest in the attorneys' fees. Additionally, the LLCs pledged their interest in the fee payments to Deutsche Bank, the indenture trustee, as collateral to secure payment of the principal and interest on the notes. Upon forming the LLCs, each Florida Counsel sold its interest in its LLC to an outside investor [— Lester G. Fant, III and his LLCs].

### [2]. The Interpleader Action

In 2004, a dispute arose concerning the supplemental payments that Plaintiffs were required to make to arbitration fee award recipients

in the fourth quarters of 2004 through 2008. To resolve the dispute, Plaintiffs filed a class action suit for interpleader relief on August 5, 2004. The complaint alleged that MTF Counsel claimed a right to the supplemental payments, even though the fee payment agreements with Mississippi, Texas and Florida did not mention the supplemental payments. The complaint further alleged that the non-MTF Counsel who had entered the Model FPA and received fee awards in arbitration claimed that MTF Counsel were not entitled to the supplemental payments. The complaint named, as the two classes of defendants, MTF Counsel and the non-MTF Counsel who were entitled to arbitration fee awards. Upon filing their complaint, Plaintiffs deposited approximately $66.34 million—the amount of the 2004 supplemental payment claimed by MTF Counsel as their pro rata share—into the district court's registry.

On September 10, 2004, Florida Counsel filed an answer in which they argued that

> [f]or the protection of the Plaintiffs and for the benefit of all "Private Counsel" retained by states and territories in connection with any "Tobacco Case" (defined as any tobacco and health case), the Mississippi, Texas and Florida Fee Payment Agreements set forth a national single payment schedule with quarterly aggregate national caps and the allocation of such proportionally between all Private Counsel having unpaid fees. In essence, the combination of provisions treats all Private Counsel equally and, therefore, operates as a "Most Favored Nations" clause for the benefit of all Private Counsel.

Citing the Model FPA, Florida Counsel noted that "any portion of the $1.25 billion that was not used to 'liquidate fees' was expressly designated to be paid into the arbitrated fee fund for payment of fees of 'each Private Counsel' who elected for arbitration." Florida Counsel contended that because "Private Counsel" is defined in the Model FPA as "all private counsel for all plaintiffs in a Tobacco Case (including State outside counsel)," Florida Counsel were entitled to a share of the supplemental payments, based on the combined structure of the Florida FPA, the MSA and the Model FPA.

In the alternative, Florida Counsel asserted a counterclaim against Plaintiffs, alleging that if the district court found that Florida Counsel were not entitled to share in the supplemental payments, "then Plaintiffs have breached their express agreement as well as their implied covenant of good faith and fair dealing with Florida Counsel" in promising that

Florida Counsel would share equally in all future attorneys' fee payments.

In December 2004, the parties reached a settlement in the interpleader action (the "Settlement [Agreement]"). MTF Counsel agreed to be paid half of the $66.34 million that they claimed from the 2004 supplemental payment and half of their pro rata share of the next four supplemental payments, with the remainder paid to the other states' private counsel who took arbitration awards. The district court granted Plaintiffs' motion for certification of the two classes of Defendants and Plaintiffs' motion for preliminary approval of the Settlement [Agreement]. On January 10, 2005, following a fairness hearing, the district court granted final approval of the Settlement [Agreement]. Pursuant to the Settlement [Agreement], all parties claiming a share of the Settlement [fund] then filed acknowledgment forms with the district court.

Deutsche Bank and [Fant's] LLCs, contending to be the assignees of the entirety of Florida Counsel's fee award, filed acknowledgment forms. Florida Counsel objected, contending that Deutsche Bank and [Fant's] LLCs were not entitled to the supplemental payments because the supplemental payments did not arise specifically from the Florida FPA. The district court overruled the objection on the ground that Florida Counsel were judicially estopped from denying that [Fant's] LLCs and Deutsche Bank were entitled to the supplemental payments under the Florida FPA. . . . Florida Counsel now timely appeal.

*Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, LLP*, 546 F.3d 752, 754-56 (6th Cir. 2008) (citations omitted).

### 3.      *Resolution of the first appeal*

In the first appeal of this case, we determined that the district court erred in concluding that judicial estoppel barred Florida Counsel's claim of entitlement to the supplemental payments pursuant to the Model FPA. *Id.* at 758. Florida Counsel's prior argument was "that their right to equal treatment with all of the other private counsel who received an arbitration award arose from the Florida FPA," and Florida Counsel's later argument was that "the supplemental payment did not become due under the Florida FPA, but rather under the Model FPA." *Id.* Because there was no clear inconsistency between the two arguments, judicial estoppel was found not to apply. *Id.*

We declined to decide the merits of Florida Counsel's arguments, however, and remanded the case "for further development of the record in the district court." *Id.* at 759.

**B.      Instant dispute**

While the first appeal to this court was pending, one of the Florida Counsel—Gentry and Phillips, P.A. (which appears to have changed names on several occasions), along with its wholly owned subsidiary, GP (FL) Funding III, LLC—filed suit in a Florida state court against Lester G. Fant, III; GP (FL) Funding II, LLC; Galway T-1, LLC; Galway II, Inc.; and Galway Partners, LLC. We will refer to the plaintiffs in the Florida state-court action collectively as "Gentry" and to the defendants in that action collectively as "Fant." According to the allegations of the complaint in the state-court proceeding, "Fant is the founder and principal of each of the three Galway Defendants (Galway T-1, LLC, Galway II, Inc. and Galway Partners, LLC)." Fant allegedly "develops, markets and sells complex financing and securitization transactions which offer lump sum payments (discounted from the fee income stream) to those who are entitled to incremental payments of money over an extended period of time," such as the attorneys who have received fee awards through the tobacco litigation class settlements.

The complaint states that Fant approached Florida Counsel in late 2000 and early 2001 with a proposed securitization plan, in which Florida Counsel

> would receive an immediate lump sum payment of their [attorney] fees (instead of payments over potentially 20 years or more) by a form of sale/transfer of their respective rights and interest in all the [attorney] fees from the Tobacco litigation to newly-organized limited liability companies ("Funding LLCs") and then by transferring all ownership rights and interests in the Funding LLCs to the Galway Defendants.

(The "immediate lump sum payment" allegation is not an entirely accurate characterization of the Fant proposal because the agreement called for at least two payments for the Florida FPA award and, as discussed below, quarterly payments for any award of supplemental payments.) In any event, the complaint further states that the

"Funding LLCs" would (1) "[i]ssue and sell secured bonds to investors ('Investor Bonds')," (2) "[p]ledge their interests in the [attorney fees] to an indentured trustee [Deutsche Bank] as collateral to secure payment of the principal and interest on the Investor Bonds," and (3) "[u]se the proceeds from the sales of the Investor Bonds to purchase Florida Participating Counsel's interest in the [attorney fees] at a discount." This agreement was formalized between Gentry and Fant in January 2001 through the "Florida Membership Interests Purchase Agreement" (Purchase Agreement).

The Purchase Agreement provides, in Section 2.3(f), for the possibility that Gentry would be awarded a share of the supplemental payments discussed above. Although these payments would not increase the total fees paid to Florida Counsel, they would accelerate the distribution schedule and provide for payment of a larger share of the attorney fees sooner than previously expected. The present-day value of the sale of Florida Counsel's interests in these fees, therefore, would increase. If Florida Counsel were to be awarded a share of the supplemental payments, the Purchase Agreement provides that the sales price would increase by approximately $2,114,458 and that "an amount equal to the amount of the increase in each quarterly payment will be payable by the [Funding LLC] to [Florida Counsel] upon the [Funding LLC's] receipt of such increased quarterly payment until the redetermined Purchase Price has been paid in full."

According to Gentry's state-court complaint, Fant told Gentry that Fant's Funding LLCs would purchase Gentry's right to the supplemental payments "for [Fant's] *own* investment versus for securitization to others." (Emphasis in original.) Therein lies the rub. According to Gentry, Fant misrepresented his plans and instead intended to use the right to the supplemental payments as collateral for a personal loan from Deutsche Bank to pay for the second lump sum already due to Gentry under the Purchase Agreement. In other words, Fant allegedly used the right to the supplemental payments as collateral to pay Gentry the discounted balance Fant owed on the original, undisputed attorney-fee award under the Florida FPA (which purportedly did not include the right to the supplemental payments).

The problem caused by Fant's pledge of the supplemental payments to Deutsche Bank is twofold. First, Fant allegedly conveyed the supplemental payments back to Gentry via a new company owned entirely by Gentry—GP (FL) Funding III, LLC—in order to obtain more time to pay the second lump sum due under the Purchase Agreement. He also purportedly "agreed to protect and assist Gentry's right and entitlement to the [supplemental payments] and to indemnify Gentry if he failed to protect and preserve Gentry's title and ownership of the [supplemental payments]." Gentry contends that Fant never intended to honor this agreement, but instead "purported to pledge" Gentry's interest in the supplemental payments to Deutsche Bank "as collateral for Fant and/or the Galway Defendants' personal loan." Because Fant allegedly assigned the supplemental payments to both Deutsche Bank and Gentry, either the pledge to Deutsche Bank was invalid or the conveyance to Gentry was fraudulent.

The second problem caused by this arrangement is that Deutsche Bank holds the supplemental payments in trust for the holders of the subordinated Investment Bonds and will not release the payments until after the maturation date of these bonds in approximately 2013. This means that the supplemental payments will not be immediately released to the Funding LLCs and therefore will not be distributed as a quarterly payment to Gentry. Although Gentry will still receive the $2,114,458 additional purchase price, it will be received as a lump sum in 2013 rather than in the fourth quarters of 2004 through 2008.

In its state-court complaint, Gentry contends that Fant (1) breached his fiduciary duty by pledging Gentry's right to the supplemental payments as collateral for a personal loan, and (2) fraudulently induced Gentry to convey its right to the supplemental payments to Fant. Gentry seeks damages for this allegedly tortious conduct. In addition, Gentry seeks a decree that Fant's LLC transferred "all rights, title and interest in the [supplemental payments]" to Gentry's LLC, and that Gentry is entitled to indemnity from Fant for Gentry's efforts in establishing entitlement to the supplemental payments in the district court.

After Gentry brought suit in the Florida state court, Fant filed a motion in the district court to enjoin Gentry from prosecuting the state-court action. Fant argued that an injunction was proper under the All Writs Act, 28 U.S.C. § 1651(a), because it was necessary to protect the district court's judgment and was also necessary in aid of the court's jurisdiction. At that time, the first appeal to this court (described in Part I.A. above) had not yet been decided. Accordingly, the district court's determination that Deutsche Bank was entitled to receive the supplemental payments rather than Florida Counsel generally, and Gentry specifically, was binding on the parties. Fant contended that the state-court litigation attacked this decision regarding entitlement to the supplemental payments by, for example, seeking a declaration that Fant had assigned the right to these payments back to Gentry. He further asserted that the Settlement Agreement and final judgment in the interpleader action barred Gentry's state-court litigation.

The Settlement Agreement between the parties to the interpleader action provides for

> the entry of an injunction by the Ohio Court [*i.e.*, the federal district court] enjoining any and all MTF [and] MSA . . . Counsel class members from instituting or further asserting any claim in any court or in arbitration against each other or Plaintiffs in any proceeding relating to the Supplement, Future Supplements, . . . and/or seeking to reform, discharge or otherwise amend the terms of this Settlement Agreement, directly or indirectly.

This agreement was reflected in the final judgment entered by the district court, which enjoins the parties from "instituting or further asserting any claim . . . relating to any matter set forth in the Amended Complaint and/or the Settlement Agreement or seeking to reform, discharge or otherwise amend the terms of the Settlement Agreement, directly or indirectly." In addition, the Settlement Agreement provides that "[t]he Ohio Court shall retain exclusive jurisdiction over any and all disputes relating to this Settlement Agreement, the enforcement of this Settlement Agreement and any monies to be allocated, advanced or recouped pursuant to this Settlement Agreement."

Gentry responded to Fant's motion by asserting that, among other things, an injunction would violate the Anti-Injunction Act, 28 U.S.C. § 2283, because the issues raised in the state-court litigation are allegedly distinct from those raised in the federal action. The district court ultimately agreed with Fant, however, and issued the injunction. In reaching its decision, the court reasoned:

> Now, Gentry has changed course yet again, asserting that the Florida Lawsuit, which seeks damages for the "wrongful" and "illegal" pledge of a portion of the Supplement payment to Deutsche Bank, does not relate to matters set forth in the Settlement Agreement. Without regard to the merits, it is plain on the face of the Florida Lawsuit that it implicates the provisions of the Settlement Agreement regarding ownership of and claims to the Supplement payments. Regardless of how Gentry's Florida claims are captioned, or in what form Gentry seeks payment of the Supplements, the claims in the Florida Lawsuit "relate to any matter set forth in the Settlement Agreement." Gentry is therefore enjoined, based upon the terms of the permanent injunction to which they agreed, from proceeding with the Florida Lawsuit.

(Citation omitted.) Gentry now appeals the district court's decision.

## II. ANALYSIS

### A. Standard of review

"We review de novo the district court's legal determination as to whether an injunction *may* issue under the Anti-Injunction Act." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 893 (6th Cir. 2002) (emphasis added). When reviewing a district court's discretionary decision regarding whether an injunction that does not violate the Act *should* be granted, we utilize the abuse-of-discretion standard. *Id.* (quoting *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1377 (9th Cir. 1997)). An abuse of discretion will be found where the district court "incorrectly applies the law or relies on clearly erroneous findings of fact." *United States v. City of Detroit*, 329 F.3d 515, 520 (6th Cir. 2003) (en banc).

**B.**      **Propriety of the district court's injunction against the state-court proceedings**

The present appeal raises the issue of whether the district court properly enjoined the parties from proceeding in the Florida lawsuit.  Gentry argues that "the district court misconstrued Gentry's state court action as seeking entitlement to the supplemental payments rather than damages against Fant and his entities" and, in any event, "the district court's injunction exceeds the terms of the settlement agreement and violates the Anti-Injunction Act."   In response, Fant contends that the district court properly construed the state-court claims as "relating to the Supplemental Payments" and correctly determined that the claims "fall squarely within the scope of the Settlement Agreement and the district court's permanent injunction."   Fant further asserts that the contested injunction is appropriate under the All Writs Act and the Anti-Injunction Act because the injunction is necessary in aid of the district court's jurisdiction.

*1.*      *General principles of law*

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651. When a federal court enjoins a state-court proceeding, however, the Anti-Injunction Act limits the scope of the federal court's authority: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  As this court has previously recognized, the "prohibition extends to indirect injunctions against parties." *Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 941 (6th Cir. 2002).

The first exception to the Anti-Injunction Act is particularly relevant to the instant dispute.  Congress has expressly authorized the issuance of injunctions against state-court proceedings in cases brought as statutory interpleader actions pursuant to 28 U.S.C. § 1335.  In such cases,

a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. Such process and order shall be returnable at such time as the court or judge thereof directs, and shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found.

Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

28 U.S.C. § 2361. This court has described interpleader actions as a "recognized exception[] to the Anti-Injunction Act." *NGS Am., Inc. v. Jefferson*, 218 F.3d 519, 524 n.5 (6th Cir. 2000).

Rather than rely on the interpleader exception, Fant focuses on the second exception to the Anti-Injunction Act, the "necessary in aid of its jurisdiction" exception. This exception is applicable to a district court's continuing authority to enforce a settlement agreement where the agreement is either incorporated into the court's final judgment or the court expressly retains jurisdiction over the agreement in such judgment. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380-81 (1994). So long as the court is acting pursuant to this authority, the All Writs Act "authorizes a federal court to issue such commands as may be necessary or appropriate to effectuate and prevent the frustration of its orders it has previously issued in exercise of jurisdiction otherwise obtained." *United States v. City of Detroit*, 329 F.3d 515, 522 (6th Cir. 2003) (en banc) (alteration, citation, and internal quotation marks omitted). Such orders are excepted from the prohibition of the Anti-Injunction Act. *See, e.g.*, *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970) (acknowledging that the exceptions to the Anti-Injunction Act "imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case"); *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229 (1922) ("It is settled that where a federal court has first acquired jurisdiction of the subject-matter of a cause,

it may enjoin the parties from proceeding in a state court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the federal court.").

With these basic legal principles in mind, we now turn to the merits of this case; *i.e.*, whether the district court's injunction against the Florida state-court litigation is within the scope of the court's permanent injunction in its final judgment and, if so, whether this action violates the Anti-Injunction Act.

### 2.          *Permanent injunction in the district court's final judgment*

The injunction in the district court's final judgment prohibits the interpleader class members from "instituting or further asserting any claim . . . relating to any matter set forth in the Amended Complaint and/or the Settlement Agreement or seeking to reform, discharge or otherwise amend the terms of the Settlement Agreement, directly or indirectly." The relevant parties to the instant appeal are all interpleader class members.

In arguing that its state-court complaint does not fall within the scope of the district court's injunction, Gentry asserts that the district court "misconstrued Gentry's state court action as seeking entitlement to the supplemental payments rather than damages against Fant and his entities." Instead, according to Gentry, the state-court complaint "seeks damages from [Fant] for secretly entering into [an agreement with Deutsche Bank that pledges the supplemental payments as collateral,] which prevents the release of monies that would otherwise be released . . . after one quarter." Gentry's complaint further alleges that Fant's "pledge to Deutsche Bank . . . was 'wrongful' and 'illegal' to the extent the pledge was inconsistent with Fant's promises and representations." The complaint, as described by Gentry, assumes the validity of the distribution to Deutsche Bank and instead claims that Gentry was duped by Fant into assigning away Gentry's rights to these payments. Even a cursory review of the state-court complaint, however, belies Gentry's characterization of the claims actually asserted therein.

In the "General Allegations" section of the state-court complaint, which Gentry incorporates into all three of its counts, Gentry asserts no less than 13 times—in paragraphs 30, 38, 41, 45, 47, 49, 50, 52, 55, 56, 61, 62, and 64—that it is entitled to the supplemental payments held by the district court because Fant in fact conveyed back to Gentry the right to these payments. Gentry argues, however, that any factual allegations in the state-court complaint regarding its entitlement to the supplemental payments are merely "background . . . to put the alleged breach of fiduciary duty and misrepresentations in context." A review of the complaint again shows that Gentry mischaracterizes its state-court claims. Allegations of Gentry's entitlement to the supplemental payments permeate all three of its asserted causes of action.

Gentry's first claim—for breach of fiduciary duty—includes the allegation that "Fant breached his fiduciary duty to Gentry by knowingly and intentionally pledging assets, *which belonged solely and entirely to Gentry and did not belong to Fant or his Defendant companies*, as collateral to Deutsche [Bank], by concealing this pledge from Gentry, and by joining Deutsche [Bank] in its pursuit of the [supplemental payments] as pledged collateral." (Emphasis added.) Gentry's claim for fraud in the inducement similarly states that "Fant, by and through the Galway Defendants, knowingly concealed from Gentry his intentions to pledge the [supplemental payments] as collateral to Deutsche [Bank] *despite the fact that neither Fant nor GP II had any ownership rights to the [supplemental payments]*, and otherwise stripped Gentry of its rights to the [supplemental payments]." (Emphasis added.) Finally, in Gentry's claim for declaratory judgment, Gentry asks the state court to "[d]etermine whether Plaintiff GP II [Fant's LLC] *transferred all rights, title and interest in the [supplemental payments]* to GP III [Gentry's LLC]." (Emphasis added.)

As demonstrated by these claims, Gentry repeatedly seeks a determination from the state court that Fant in fact conveyed the right to the supplemental payments back to Gentry prior to pledging these payments as collateral to Deutsche Bank. Gentry has therefore attempted to put its entitlement to the supplemental payments, which are under the exclusive control of the district court, at issue in the state-court litigation. As aptly

observed by the district court, "Without regard to the merits, it is plain on the face of the Florida Lawsuit that it implicates the provisions of the Settlement Agreement regarding ownership of and claims to the Supplement payments." We agree.

Gentry attempts to avoid this inevitable conclusion by arguing that "the parties to the Settlement Agreement did *not* contemplate conferring exclusive jurisdiction of disputes between and among members of the MTF Counsel Class to the district court." (Emphasis in original.) Instead, according to Gentry, "the adversaries to the interpleader action agreed to settle and forego any further suit against 'each other' as to the respective share of . . . MTF Counsel to the interpled funds and to not sue the Tobacco Companies because of such distribution." (Footnote omitted.) But this argument directly conflicts with the expansive language used in the Settlement Agreement to describe its scope. For example, the parties expressly conferred exclusive jurisdiction on the district court over "any and all disputes relating to" the Settlement Agreement and involving "monies to be allocated, advanced or recouped" pursuant to the Agreement.

In addition, the parties agreed that the only way for a class member (who did not appeal the final judgment) to receive a distribution from the settlement fund is to file an acknowledgment form with the district court. The court incorporated this provision into its final judgment where it states that the settlement fund "shall remain under the control of this Court and shall be disbursed pursuant to the terms of the Settlement Agreement." This language therefore brings the proper distribution of the fund (at least initially from the court) within the terms of the Settlement Agreement and the final judgment.

Another section of the Settlement Agreement supports this interpretation, where the Agreement recognizes that some of the class members "participated in a transaction where some or all of the interests of one or more Private Counsel in and to their respective Fee Awards for such state were pledged or assigned in connection with a securitization transaction." This provision would be wholly irrelevant and unnecessary if it were not the parties' intent for the Settlement Agreement to govern the distribution of the subject funds to those to whom the rights to the monies had been assigned. And

in order to make a legally valid distribution, the district court must determine the propriety of the "securitization transaction" assignments, including Gentry's assignment to Fant.  Gentry's argument that the parties did not intend the Settlement Agreement to govern disputes between MTF Counsel and their assigns therefore lacks merit. Accordingly, Gentry's claims in the state-court litigation fall squarely within the subject matter of the Settlement Agreement and the terms of district court's permanent injunction.

### 3.          *Injunction against the state-court litigation*

We must next consider whether the injunction against the state-court litigation nevertheless violates the Anti-Injunction Act, as argued by Gentry.  Fant contends that the injunction was permissible under the "necessary in aid of its jurisdiction" exception to the Anti-Injunction Act.  We agree with Fant on this point for the reasons set forth below.

### a.          *Final judgment*

As detailed above, the district court in its final judgment enjoined the parties from bringing any claim related to the subject matter of the Settlement Agreement.  And "[w]hen a court issues an injunction, it automatically retains jurisdiction to enforce it." *Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993); *see also Peacock v. Thomas*, 516 U.S. 349, 356-57 (1996) (describing "a federal court's inherent power to enforce its judgments"); *In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine Prods. Liab. Litig.*, 369 F.3d 293, 298 (3d Cir. 2004) ("Emphatically, the District Court is empowered to protect its jurisdiction and effectuate the settlement agreement.").  The district court's enjoining of the state-court litigation, therefore, is a proper means of enforcing its previously entered permanent injunction.

Gentry seeks to avoid application of the permanent injunction to the state-court litigation by belatedly challenging the relevant language used in the district court's final judgment as "overbroad" and "broader than that to which the parties to the Settlement

Agreement agreed," claiming that this raises "serious due process concerns in light of the class settlement notice." Specifically, Gentry asserts that although the Settlement Agreement provides for an injunction covering only those claims "relating to the Supplement [or] Future Supplements," the final judgment enjoins claims "relating to any matter set forth in the Amended Complaint and/or the Settlement Agreement."

There are a number of problems with Gentry's assertion. To start with, Gentry raises the argument for the first time in its Reply Brief (and in a footnote at that). The law in this circuit is well established that "[i]ssues raised for the first time in a reply brief are not properly before this court." *United States v. Perkins*, 994 F.2d 1184, 1191 (6th Cir. 1993). Gentry's argument is procedurally improper for the additional reason that Gentry failed to object to the Settlement Agreement or the proposed final judgment containing the contested language prior to the entry of the final judgment, nor did Gentry appeal the same.

And even if Gentry's argument were not waived, it is without merit because the terms of the Settlement Agreement clearly evidence the parties' intent to confer broad enforcement powers on the district court concerning all matters related to the Agreement, including the distribution of the settlement fund from the court. The Settlement Agreement expressly provides for an injunction against "any proceeding relating to the Supplement, Future Supplements, . . . and/or seeking to reform, discharge or otherwise amend the terms of this Settlement Agreement, directly or indirectly."

In addition, the Agreement demonstrates that the parties agreed that "[t]he Ohio Court shall retain exclusive jurisdiction over any and all disputes relating to this Settlement Agreement, the enforcement of this Settlement Agreement and any monies to be allocated, advanced or recouped pursuant to this Settlement Agreement." Finally, the Notice of Settlement utilizes the broader language that Gentry challenges in the permanent injunction, explaining that class members "will be forever barred and permanently enjoined from asserting any claim in the future in any proceeding relating to the subject-matters of the Settlement Agreement." Gentry's argument that it somehow

lacked notice of the scope of the permanent injunction provided in the district court's final judgment is therefore wholly lacking in merit.

### b.          Class settlement

The fact that this federal case involves a complex class settlement also provides an additional reason why the district court's injunction against the state-court litigation is proper. For "[i]t is now settled that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action. This is true even though the precluded claim was not presented, and could not have been presented, in the class action itself." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 366 (3d Cir. 2001); *see also Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) (explaining that, in a fairness review of the release of future claims in a class settlement, "[t]he question is not whether the definition of the claim in the complaint and the definition of the claim in the release overlap perfectly; it is whether the released claims share a factual predicate with the claims pled in the complaint" (citation and internal quotation marks omitted)).

Part of the justification for this principle is that a class action is "analogous to . . . an in rem action . . . , where it is intolerable to have conflicting orders from different courts." *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 337 (2d Cir. 1985) (citation omitted); *see also Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989) (reasoning that a "lengthy, complicated litigation is the virtual equivalent of a res" (citation and internal quotation marks omitted)). Accordingly, the district court's injunction is necessary in aid of its jurisdiction because Gentry's state-court claims threaten the district court's ability to administer the class settlement fund, as explained below.

Gentry alleges and seeks a declaration in the state-court action that Fant transferred back to Gentry the right to the supplemental payments. If this is true, then Fant had no right to pledge the supplemental payments as collateral to Deutsche Bank,

and therefore Deutsche Bank had no entitlement to receive the payments from the district court.

A determination of this factual dispute by the state court could have preclusive effect on the federal interpleader case and therefore would interfere with the district court's ability to distribute the settlement fund. *See Kline*, 260 U.S. at 230 (explaining that in parallel proceedings in state and federal court, "[w]henever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of res adjudicata by the court in which the action is still pending in the orderly exercise of its jurisdiction"). Moreover, the other Florida counsel, who have identical attorney-fee purchase agreements with Fant's various LLCs, might follow Gentry's lead and bring similar claims in Florida in an effort to circumvent the district court's authority and gain a more favorable state-court determination of their entitlement to the supplemental payments. An injunction is therefore necessary to prevent the litigation of any claims predicated on this factual determination in the state court and to protect the district court's ability to manage the distribution of the class settlement fund.

### c.          *Statutory interpleader*

The district court acted within its authority for the additional reason that the federal case is a statutory interpleader action. In an interpleader action, a stakeholder deposits the fund at issue (or a proper bond) into the registry of the court. 28 U.S.C. § 1335(a)(1). If interpleader is properly invoked, "the court determines the respective rights of the claimants to the fund." *U.S. v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007). Thus, in the typical, properly filed interpleader case, the court has exclusive control over the disputed res. *Id.* 642 n.2.

Such is the case in the instant matter, where the district court explained in its final judgment that "[t]he $66,342,904 Plaintiffs deposited in an account subject to the exclusive control of this Court, which represents the disputed portion of the Supplement as set forth in the Settlement Agreement, shall remain under the control of this Court and

shall be disbursed pursuant to the terms of the Settlement Agreement." Because the court has exclusive control over the res—the disputed portion of the supplemental payments—any dispute regarding entitlement to the res that is brought before a different court threatens "to defeat or impair the jurisdiction of the federal court" to determine the rights of the parties before it. *See Kline*, 260 U.S. at 229; *see also In re Baldwin-United Corp.*, 770 F.2d at 336 (explaining that a "federal court is empowered to enjoin any state court proceeding affecting [the] res" in an in rem action).

Indeed, the interpleader statute provides the district court with the authority to enjoin the interpleader claimants "from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court," to "make the injunction permanent," and to "make all appropriate orders to enforce its judgment." 28 U.S.C. § 2361. There can be no doubt, given this broad grant of power by Congress, that the district court was acting within its authority when it enjoined the state-court litigation.

### 4.          *The injunction was proper*

Despite Gentry's claims to the contrary, this is not a case in which we are being asked to determine whether a district court may properly enjoin a state-court action involving tort claims that are only "tangentially related" to the subject matter of the federal case. *See United States v. Ford Motor Co.*, 522 F.2d 962, 966-67 (6th Cir. 1975) (reasoning that an interpretation of the Anti-Injunction Act that enables a federal court "to enjoin a state court proceeding whenever the state suit is tangentially related to the prior federal judgment would unduly expand the Congressional exceptions" to that statute); *cf. Sandpiper Village Condo. Ass'n, Inc. v. La.-Pac. Corp.*, 428 F.3d 831, 844 (9th Cir. 2005) (concluding that an injunction was not necessary in aid of the district court's jurisdiction where the state-court litigant did *not* seek to "contest the payment of funds to class members or make a claim on the settlement fund"). Whether Gentry theoretically could have pled independent torts without challenging the district court's

distribution of the supplemental payments to Deutsche Bank is not an issue raised on appeal.

Gentry argues that the case of *Burr & Forman v. Blair*, 470 F.3d 1019 (11th Cir. 2006), nevertheless compels the conclusion that the district court's injunction violated the Anti-Injunction Act. *Blair* involved "a dispute among several groups of attorneys over the entitlement to attorney's fees awarded in connection with the settlement of a mass tort litigation in the district court." *Id.* at 1021-22. The attorney-fees fund was "administered by a settlement administrator under the district court's jurisdiction." *Id.* at 1023. Two attorneys who participated in the mass-tort class action brought suit for breach of contract in state court, alleging that another law firm failed to share its attorney-fee award with them in violation of a purported fee-sharing agreement between the parties. *Id.* at 1022. The district court enjoined the two attorneys from proceeding in the state-court action, but the United States Court of Appeals for the Eleventh Circuit reversed on the basis that the injunction violated the Anti-Injunction Act. *Id.* at 1022, 1030-36.

At first blush, the *Blair* case appears to be strikingly similar to the instant action. Further review, however, reveals several key distinctions. First, the class settlement in *Blair* concerned the merits of the mass-tort action, whereas the class settlement in the present case concerns only the entitlement to attorney fees. The state-court action enjoined in the present case therefore threatens the entitlement of the class members (the private counsel and their assigns) to their judgment, whereas in *Blair* the state-court judgment "would not threaten the entitlement of the [mass-tort victims] to their judgment," *id.* at 1033.

Second, in the instant case, Gentry asks the state court to determine whether Fant assigned the right to the supplemental payments back to Gentry, in effect seeking a declaration of entitlement to the settlement fund. The *Blair* state-court litigants did not seek such a declaration of entitlement to the disputed attorney fees. *See id.* at 1031-33. Third, unlike in the instant matter, there was no previously issued permanent injunction

in *Blair* prohibiting the parties from pursuing claims related to the class settlement. *See id.* at 1032. Fourth, this case is an interpleader action, over which the district court is granted special injunctive authority pursuant to 28 U.S.C. § 2361. *Blair* is not such a case.

The last reason that the cases are distinguishable is that the *Blair* state-court litigants in fact raised an independent breach-of-contract claim that did not assert entitlement to the attorney fees held under the district court's jurisdiction. *Blair*, 470 F.3d at 1033. In contrast, the instant case involves state-court claims that directly allege—and in fact seek a declaration of—Gentry's entitlement to the class settlement fund. Accordingly, we find do not find *Blair* to be analogous to the circumstances of the case before us.

We instead find the reasoning of the United States Court of Appeals for the Third Circuit in *In re Prudential Insurance Co. of America Sales Practices Litigation*, 314 F.3d 99 (3d Cir. 2002), more on-point and persuasive. During the pendency of that federal class-action case, two class members brought suit to seek damages for the manner in which their claims were handled in the alternative-dispute-resolution process established by the settlement agreement to provide relief to class members. *Id.* at 100-01. The district court enjoined the state-court action, and the Third Circuit affirmed, reasoning that

> [the state-court] plaintiffs' claims here constitute a direct challenge to the system of remedies specified in the class action settlement. While plaintiffs contend they do not challenge these procedures themselves, or the award they derived from it, their claims cannot be separated from challenges to the [settlement remedial procedures]. They allege, for instance, undue delay in obtaining relief. But a determination of unreasonable delay or improper handling is necessarily dependent on an assessment of the adequacy and operation of the settlement's [remedial] procedures. It is far from certain, therefore, that plaintiffs could state these claims in a manner sufficiently detached from the issues resolved in the class action to avoid claim preclusion.

*Id.* at 104 (footnote omitted).

In the present matter, Gentry's state-court complaint does not set forth claims "in a manner sufficiently detached" from the district court's administration of the settlement fund to avoid the permanent injunction in the federal interpleader action's final judgment. *See id.* Accordingly, the district court did not err in enjoining the litigation of the state action as necessary in aid of its jurisdiction.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the order of the district court enjoining the parties from proceeding in the state-court litigation.